WRIGHT and Others *v.* BUNDY.*

The defendants, in this case, first answered simply in abatement. This answer was disposed of by the Court, and thereupon they answered over to the merits. *Held*, that this seems to be the most convenient practice; that, at all events it is not substantially erroneous.

Suit by the trustee against mortgagors and their lessees in possession, to obtain a foreclosure and order of sale upon a trust mortgage. The mortgagors made default. The instrument upon which the suit was brought purported to be executed by the *Cincinnati and Chicago Railroad Company*, for the consideration, &c., to *Martin L. Bundy*, conveying to him lands and rolling stock of the company "in trust for the uses and purposes following, to-wit: Whereas, a large portion of the debts of said railroad company have been secured by the personal indorsements of the present directors, and others who were formerly directors of the company, and for which they are now responsible, among which is a debt to the *Citizen's Bank*, at *Richmond, Indiana*, amounting to over 50,000 dollars. Now this conveyance is hereby declared to be in trust to secure and indemnify, first, the said persons who are bound for the said debt, &c., or who may at any time hereafter become bound therefor, either as makers, acceptors, or indorsers thereof, &c., and, secondly, to secure all the indorsers of said company against all other debts, &c., for which they are or may become in any manner liable as makers, &c. —the said trustee to hold all of said property until the said debt at the *Citizen's Bank*, or some part thereof, shall become due, &c., and then, in case of the non-payment thereof, he is hereby directed and required to sell the same, or so much thereof as may be required to pay said debt," &c. This instrument purports to have been acknowledged before *Samuel Stokes*, a notary public of *Ohio*, on, &c., and was recorded in *Henry* county, *Indiana*, on, &c., in which county the company had their principal office in this state. Trial upon the general issue, and certain special issues, the matters set up in which could be proved under the general issue. The facts upon which the decision was founded were as follows: 1. The mortgage, or deed of trust, was executed *November* 10, 1854, in *Cincinnati, Ohio*. It embraces certain land and rolling stock of the company, but not the road bed. It was recorded in *Henry* and *Wayne* counties, but not in certain others through which the railroad in question extended, within ten days from its execution; and though it purports to have been, yet there is evidence tending to show that it never was, acknowledged. 2. The rolling stock embraced in it was never actually delivered into the possession of the trustee or mortgagee, but was retained and used by the company, in their lessees. 3. There were prior mortgages and liens upon the property. 4. The beneficiaries of the trust, and prior creditors, were not made parties to the suit; and the debt due the beneficiaries, was usurious. 5. The company, by their directors, said *Martin*

---

* This case was twice argued very thoroughly by able counsel, both orally and in printed briefs; but the transcript, briefs, and other papers, being absent from the clerk's office, no abstract of the argument is given.

*L. Bundy* being one, on the 16th day of *October*, 1856, leased the road, rolling stock, &c., to *Wright & Co.* for five years, and put them in possession. The lease was executed in *Cincinnati Ohio*, and is set up by way of estoppel.

7. The debt for which the plaintiff and others are liable, and to secure which the mortgage was executed, was the debt of another company, consolidated with the present, and that the assuming said debt was without authority and void.

*Held*, 1. That if the beneficiaries should have been parties at all, they should have been plaintiffs; but it was not necessary that they should be plaintiffs.

2. That the rights of prior incumbrancers could not be prejudiced by this proceeding; that, as a general rule, prior mortgagees are not necessary parties to a junior's bill of foreclosure, though they may be proper parties.

3. That the defense of usury was no bar; that the debtor does not set it up, and a third person cannot, without the debtor's consent; that if it were allowed, it would not go to the whole cause of action.

4. That the contract was not void because executed out of this state; that there is nothing in the railroad act requiring the directors of such corporations to transact their business within this state; that though corporations cannot migrate from one sovereignty into another, so as to become legal, local existences within the latter sovereignty, the migration of directors of a corporation does not terminate the existence of the corporation within the sovereignty which created it; that by our statute (1 R. S. p. 409), the stockholders are the corporation, and the directors are its agents; that by courtesy, corporations created in one state, are permitted to contract and sue in others; that if all the directors could so contract as agents, they may authorize one of their number to contract; that the place where the agent of a corporation enters into a contract, is, in general, immaterial—the important question arising being that of power not of place; that the exercise of that power has relation to the place of their legal establishment; that the meetings of the directors of a business corporation are not analogous to the sessions of a judicial tribunal; that the corporation is organized by the election of directors, but the mere organization of the directors into a formal meeting for business afterwards, is a different thing; that *it seems* that corporations chartered in this state, and local to it, may have offices for business in other states.

5. That the mortgage was not void because not executed directly to the creditors who made the loan to the company; that it was substantially within the power conferred upon the company to raise money by mortgaging their property.

6. That although this railroad company was formed by a consolidation of other companies, and the debts secured by the mortgage were owed by one of those companies, the consolidated company could, *it seems*, assume them; but that the transaction in this case did not amount to such assumption; that the directors of the company indebted are still the debtors, and the mortgage simply covers property belonging to them at the time of consolidation; that, in equity, it amounts to no more than if the latter company had mortgaged the property to secure her own debts, before the consolidation, and then entered into the consolidation with property subject to the mortgage.

7. That regarding the instrument as a mortgage of chattels, the recording was sufficient to constitute constructive notice; that the place where the company

Nov. Term,
1858.

WRIGHT
v.
BUNDY.

kept their principal office in this state, must be regarded as the residence of the corporation.

The acknowledgment bears the impress of the notarial seal, and the mortgagor admits it; but *a Samuel Stokes* testified that he did not, to the best of his recollection, take the acknowledgment, and that he knew of no other notary in *Cincinnati* of the same name. There was, also, a certificate of the secretary of state of *Ohio*, that but one *Samuel Stokes* had been appointed a notary.

*Held*, 1. That if the acknowledgment was not given, still, as the mortgagors delivered the mortgage to the mortgagee, and the latter to the recorder, as genuine, and it was regular upon its face, *it seems*, it was the duty of the recorder to place it upon record, and he having done so it was notice to all persons of its existence.

2. That the acknowledgment was not disproved.

3. That as no law of *Ohio* was produced, showing the authority of the secretary of state to certify as to the appointment of notaries, and as there is no deposition of the governor upon the subject, the Court does not know that he can have any official knowledge of the premises.

4. That an authority to certify copies of documents so that they may be admitted as evidence, would not extend to certifying other facts so that the certificate could have the effect of evidence; that facts which the officer is not authorized by law to certify, must be proved as other facts.

5. That the question whether the instrument sued on, (which this Court treated as a trust mortgage, in the nature of a mortgage), is a deed of trust or a mortgage, is immaterial, and could only have been material if the instrument had not been recorded.

6. The mortgage having been duly acknowledged and recorded, no question arises upon the non-delivery of possession under it.

After the execution and recording of the mortgage, the company, *Bundy* being one of the directors, leased the property embraced by it to *Wright* and others, for five years. Before the expiration of the lease, the claims of the beneficiaries of the trust became due, were not paid, and the trustee, for their benefit, proceeded to obtain an order for the sale of the property. The lessees pleaded the act of the trustee in participating in the lease to them, as an estoppel *in pais* of his right to foreclose and sell the property. *Held*, that no estoppel arises upon the facts.

A precedent debt constitutes a valuable consideration for a mortgage.

*Monday,*
*December 20.*

APPEAL from the *Wayne* Circuit Court.

PERKINS, J.—Suit by *Martin L. Bundy*, the trustee, to obtain a foreclosure and order of sale upon a trust mortgage, against *The Cincinnati and Chicago Railroad Company*, the mortgagors, and *Wright* and others, their lessees, having in possession and use the property covered by the trust mortgage.

The company made default. Trial of issues of law and

fact, between the plaintiff and the lessees, the other defendants, and final judgment for the plaintiff.

The case involves a large amount of property, and has been argued upon both sides with unsurpassed ability and thoroughness.

The railroad company, as we have said, made default.

The other defendants first answered simply in abatement. This answer was acted upon and disposed of by the Court, and thereupon the defendants answered over to the merits.

This strikes us as the most convenient practice. At all events, it is not a substantially erroneous one. *Newell* v. *Gatling*, 7 Ind. R. 147.

The instrument upon which the suit was brought purported to be executed by *The Cincinnati and Chicago Railroad Company*, for the consideration of one dollar, to *Martin L. Bundy*, conveying to him lands and rolling stock of the company, "in trust for the uses and purposes following, to-wit: Whereas, a large portion of the debts of said railroad company have been secured by the personal indorsements of the present directors, and others who were formerly directors of the company, and for which they are now responsible, amongst·which is a debt due the *Citizen's Bank*, at *Richmond, Indiana*, amounting to over. 50,000 dollars. Now this conveyance is hereby declared to be in trust to secure and indemnify, first, the said persons who are bound for the said debt at the *Citizen's Bank*, or who may, at any time hereafter, become bound therefor, either as makers, acceptors, or indorsers thereof, or any portion of the same; and, secondly, to secure all the indorsers of said company against all other debts and liabilities of said company for which they are or may become in any manner liable as makers, drawers, acceptors, or indorsers, for or on account of said company—the said trustee to hold all of said property until the said debt at the *Citizen's Bank*, or some part thereof, shall become due and required to be paid; and then, in case of the non-payment thereof, he is hereby directed and required to sell the same, or so much thereof as may be required to pay said debt;" and then he

Nov. Term, 1858.

WRIGHT v. BUNDY.

is to hold the residue of said property, to discharge in like manner other secured debts as they become due, and when all are paid the balance, if any, of the property reverts to the company.

This instrument purports to have been acknowledged before *Samuel Stokes*, a notary public of *Ohio*, on the 10th of *November*, 1854, and was recorded in *Henry* county, *Indiana*, on the 13th of the same month. It is inferable from the record, that the principal office of the company, in this state, was at *Newcastle*, in said *Henry* county.

A demurrer to the complaint for a misjoinder of causes of action was overruled; but no point arises in this Court upon the ruling. Section 52, 2 R. S. p. 38, enacts that "No judgment shall ever be reversed for any error committed in sustaining or overruling a demurrer for misjoinder of causes of action." See also, § 51, on the same page, and § 72, p. 43.

The defendants answered in twenty-eight paragraphs. A demurrer was sustained to most of them. Trial of the general, and certain special issues, by the Court, and final judgment for the plaintiff, and an order for the sale of the property, &c.

Without reciting the voluminous pleadings at length, we will endeavor to extract from them the facts upon which the decision of the cause must rest.

1. The mortgage, or deed of trust, upon which the suit is founded, was executed *November* 10, 1854, in *Cincinnati, Ohio*. It embraces certain land and rolling stock of the company, but not the road bed. It was recorded in *Henry* and *Wayne* counties, but not in certain others through which the railroad in question extended, within ten days from its execution; and though it purports to have been, yet there is evidence tending to show that it never was acknowledged.

2. The rolling stock embraced in it was never actually delivered into the possession of the trustee or mortgagee, but was retained and used by the company, or their lessees.

3. There were prior mortgages and liens upon the property.

4. The beneficiaries of the trust, and prior creditors, were not made parties to the suit; and the debt due the beneficiaries, *Morrison, Blanchard, & Co.*, was usurious.

*6. The company, by her directors, said *Martin L. Bundy* being one, on the 16th day of *October*, 1856, leased the road, rolling stock, &c., to *Wright* and company for five years, and put them in possession. The lease was executed in *Cincinnati, Ohio*, and is set up by way of estoppel.

7. The debt for which the plaintiff and others are liable, and to secure which the mortgage was executed, was the debt of another company, consolidated with the present, and the assuming said debt was without authority and void.

The point as to parties may be briefly disposed of. If the beneficiaries should have been parties at all, they should have been plaintiffs; but it was not necessary that they should be plaintiffs. 2 R. S. p. 27, §§ 3, 4.

The rights of prior incumbrancers could not be prejudiced by this proceeding. Their liens upon the property would not be divested by a sale under the judgment in this case. As a general rule, prior mortgagees are not necessary parties to a junior's bill of foreclosure. They may be proper, but are not necessary parties.

The defense of usury in the debt of *Morrison, Blanchard, & Co.*, is no bar to the suit, according to the decision of this Court in *Stephens* v. *Muir*, 8 Ind. R. 352. The debtor does not seek to set up the defense; a third person cannot, without the debtor's consent. If the defense were allowed, so far as the company, the debtor, was concerned, it would not go to the whole cause of action, but only to a part of it, the interest; or, if the entire debt to *Morrison, Blanchard, & Co.*, were void, still the mortgage or deed of trust is for the securing of other debts which are not alleged to be invalid, and to satisfy which, a sale is necessary.

It is said the debt due *Morrison, Blanchard & Co.* was evidenced by paper payable in *New York*, and entirely void, because of its being usurious by the law of that state. On this point we need not dwell, as it cannot influence the

Nov. Term,
1858.

WRIGHT
v.
BUNDY.

cause, usury not being an available defense for these lessees who set it up. See, however, *The Madison Ins. Co.* v. *Mix*, at this term (1).

We do not think the contract void because executed out of the state. There is nothing in our railroad act requiring the directors of the corporations to transact their business within the state. It is true that corporations cannot migrate from one sovereignty into another, so as to become legal, local existences within the latter sovereignty; but it is also true that the migration of the directors of a corporation from one sovereignty into another does not terminate the existence of such corporation within the sovereignty which created it; for by our statute, 1 R. S. p. 409, the stockholders are the corporation, the directors its agents; and by interstate and international courtesy, corporations created in one state are permitted to contract and sue in others; and if all the directors could there, as agents of the corporation, make a contract, why can they not there authorize one of their number to make it.

The mere place where the active agents of a corporation enter into a contract must, in general, be immaterial. The important question arising must be one of power, not of place. The exercise of the power has relation to the place of their legal establishment, where the contract may be subsequently acted under. The meetings of the directors of a business corporation are not analogous to the sessions of a judicial tribunal. The corporation is organized by the election of directors; but the mere organization of the directors into a formal meeting for business afterwards, is quite a different thing.

States cannot migrate, but by their agents, they are daily making contracts without their territorial boundaries. Besides, our law seems to contemplate that corporations chartered in this state, and local to it, may have offices for business in other states. 1 R. S. p. 113, § 32.—Acts of 1853, p. 102. Such, also, is the spirit of our legislation, authorizing railroad companies in this state to consolidate with those in other states.

It is further objected to the validity of this mortgage or

deed of trust, that it is void because not executed directly

to the creditors who made the loan to the company. We do not think this objection valid. We think the instrument executed was substantially within the power conferred upon the company to raise money by mortgaging their property.

*The Cincinnati and Chicago Railroad Company* was formed by a consolidation of other companies of which the company for building a railroad from *Richmond* to *Logansport* was one. The debts secured by the mortgage or deed of trust, executed by the new company arising out of the consolidation, were owed by the *Richmond* and *Logansport* company. And it is contended that the new, consolidated company could not assume the debts of the separate members consolidating. This point seems to be settled the other way (see Redf. on Railways, p. 623); but it is not now necessarily to be decided by this Court. The transaction, in the case at bar, did not amount to such an assumption. The directors of the indebted company are still the debtors, and this deed of trust or mortgage simply covers property belonging to the indebted company at the time of the consolidation. If the debts were those of a single company, so was the property transferred in security. In equity it amounts to no more, than though the *Richmond* and *Logansport* company had mortgaged the property to secure their own debts before the consolidation, and then entered into the latter act with their property subject to the mortgage. Not having done this, it was right to provide that their property should stand for their own debts afterwards. Perhaps such would have been the case in point of law. The corporation itself, it will be observed, does not deny the validity of its act, nor seek to avoid it.

A question is made upon the recording of the mortgage or deed of trust. . Treating the instrument as a mortgage and not a deed of trust—it is in fact a trust mortgage—and further regarding it as a mortgage of personal property, we think it was sufficiently recorded to constitute constructive notice. It was recorded in the county where the company

had its principal office in this state.    That must be taken as the residence of the corporation.

The statute requires that chattel mortgages shall be recorded within ten days, &c., in the county where the mortgagor resides, to be valid, &c.    It contemplates but one residence and one recording; and, if the statute is applicable to corporations, the residence of any given corporation, must be regarded, with reference to this statute, as being at the place of the principal office in this state.    See *Chenyworth* v. *Daily*, 7 Ind. R. 284.

The mortgage purports to have been acknowledged before *Samuel Stokes*, a notary public, and has upon it the impress of his notarial seal, and the mortgagor admits the acknowledgment; but a *Samuel Stokes* testifies that he did not, to the best of his recollection, take the acknowledgment, and that he knows of no other notary in *Cincinnati* by the name of *Samuel Stokes*.    There is also a certificate of the secretary of state of *Ohio*, that but one *Samuel Stokes* has been appointed a notary.

On this evidence, two questions arise.

Suppose the acknowledgment was not given, still, as the mortgagors delivered the mortgage to the mortgagee as genuine, and the mortgagee delivered it to the recorder as such, and it was regular upon its face, was it not the duty of the recorder to place it upon record? and having done so, was it not legal notice to all persons of its existence? A notarial seal, *prima facie*, proves itself, and the acknowledgment of the mortgage upon its face was complete and conformable to law.    Had it not been so, or had it been an instrument not within the recording act, it is admitted it would not have been the duty of the recorder to put it upon record, and, hence, could not have operated as notice. As it is, it cannot be said to be entirely clear that it should not thus operate.    We do not decide the point, however, as it is not necessary we should, because we do not think the acknowledgment was disproved.    How stands the case?    Here is a mortgage having upon it a written acknowledgment, with the impress of a notarial seal corres-

ponding with the signature of the officer before whom the acknowledgment appears to have been taken, and, in addition, the admission of the mortgagor that the acknowledgment is genuine. To answer this, there is the testimony of one *Samuel Stokes*, that he did not, to the best of his recollection, take the acknowledgment, and that he does not know that there is another notary of that name in *Cincinnati*, a city of two hundred and fifty thousand inhabitants. There is a certificate of the *Ohio* secretary of state as above stated. There is no deposition of the governor of *Ohio* upon the subject, and no law of that state is produced showing the authority of the secretary of state to certify as to appointments of notaries public. We do not know that he can have any official knowledge in the premises. If he can, it must be by virtue of a statute. Such a statute should have been proved, if in existence. The principle is settled by the cases of *Doughton* v. *Tillay*, 4 Blackf. 433, and *Fellows* v. *Miller*, 8 *id*. 231, where it is decided that to make an affidavit, sworn to before a justice of the peace of another state, evidence for any purpose in the Courts of this state, it must be shown that the justice was authorized by the law of such other state to administer an oath. See, also, Ind. Dig. p. 424, § 26; *Draggoo* v. *Graham*, 9 Ind. R. 212.

Further, the certificate of the officer, as to the question involved in this case, is not to a copy of any paper or document, legally in his custody, but to a negative fact, a denial of the existence of a record or document; and it seems, that an authority to certify copies of documents, so that they may be admitted as evidence, does not extend to certifying other facts, so that the certificate can have the effect of evidence. Facts which the officer is not authorized by law to certify must be proved as other facts.

The question has been elaborately argued as to whether the instrument sued on is a mortgage or deed of trust. We have treated it as a trust mortgage, and in the nature of a mortgage; but the point is not material, in the view we have taken. It could only have been material had the instrument not been recorded. The statute does not re-

quire deeds of trust to be recorded. See, however, as to the distinction between mortgages and deeds of trust, Burr. on Assignments (2d ed.) p. 691, in *addenda.*

The mortgage having been duly acknowledged and recorded, no question arises upon the non-delivery of possession under it.

It remains to examine the question of estoppel. The facts upon which it is claimed to arise are these: The railroad company, by a trust mortgage, conveyed her property to *Martin L. Bundy*, to be held by him as a security for certain creditors of the company, till their claims should become due, and then to be sold by him for the payment of those claims. He was constituted a trustee, without having himself a beneficial interest in the property, and with specified powers as to the holding and sale of it. The trust mortgage was duly recorded, and the law made the record notice to all the world of its contents. This is the general law; and see 1 R. S. p. 502, § 3.

Subsequently the company, said *Bundy* being one of the directors, leased the property embraced in the trust mortgage to *Wright* and others, for five years. Before the expiration of the five years, the claims of the creditors, the beneficiaries in the trust mortgage, become due, are not paid, and the trustee, for their benefit, proceeds to obtain an order for the sale of the property. The lessees plead the act of the trustee in participating in the lease to them, as an estoppel, *in pais*, of his right to foreclose and sell the property.

We do not think the estoppel arises upon the facts—

1. Our statute enacts that, "every sale, conveyance, or other act of a trustee, in contravention of a trust, shall be void." 1 R. S. p. 503, § 5.

2. His act could not, upon any principle known to the law, operate as an estoppel to the creditors for whose benefit the trust was created, and who had not authorized or consented to his act.

3. The lessees had notice, by the record of the trust mortgage, of the extent of interest possessed by the respective parties, and of the liability to which they might

be exposed of having the property taken from them in the contingency that the secured creditors should not be otherwise paid, and should force the collection of their claims.

A precedent debt, according to the line of decision in this state, constitutes a valuable consideration for a mortgage. *Work* v. *Brayton*, 5 Ind. R. 396.

The result at which we have arrived, as to the validity of the plaintiff's claim under the trust mortgage, renders it unnecessary that we should inquire into the validity of the lease to *Wright* and others.

*Per Curiam.*—The judgment is affirmed with costs.

*O. P. Morton, W. A. Bickle, J. F. Kibbey, R. M. Corwine, D. D. Pratt,* and *W. Z. Stuart,* for the appellants.

*J. S. Newman, J. P. Siddall, C. B. Smith, M. L. Bundy,* and *D. P. Lowe,* for the appellee.

(1) *Ante,* 117.

--- · ◦ · ---

## THE SAME CASE.*

ON PETITION for a Rehearing.

PERKINS, J.—An earnest petition for a rehearing has been filed in this case. We have, in considering it, carefully reexamined the record of the cause to see if we could discover a doubt of the correctness of the decision already rendered, upon which we might, consistently with the rules of practice, grant the petition.

The suit is by the trustee upon a trust mortgage. It is against the party appearing to have executed the mortgage, and two others, viz., *John W. Wright* and *Jared B. Curtis.* The party to the mortgage made default, thus admitting its execution. *Wright* and *Curtis* answered. The first paragraph of their answer was the general denial—a denial of each and every allegation in the complaint.

---

*The opinion on the petition for a rehearing of this cause was delivered on the 12th of *March;* but for convenience, it is inserted here.

Nov. Term, 1858.

WRIGHT
v.
BUNDY.

Two other paragraphs denied the execution of the mortgage, and its acknowledgment, specially. One of these paragraphs was verified by the oath of *Curtis.*

To these special paragraphs a demurrer was sustained. There was no error in this, because these paragraphs amounted to no more than the general denial. They might have been stricken out on motion. This will not be denied as to the paragraph not verified by oath. That paragraph imposed no burden of proof upon the plaintiff beyond that imposed by the general denial. A moment's examination will show that the paragraph verified amounted to no more than the one not verified.

Our code provides that, "where a writing, purporting to have been executed by one of the parties, is the foundation of, or referred to in any pleading, it may be read in evidence on the trial of the cause against such party, without proving its execution, unless its execution be denied by affidavit before the commencement of the trial, or unless denied by a pleading under oath. The latter party shall, in all cases, have inspection of the instrument of writing before pleading."

Here, *Wright* and *Curtis* were not parties to the mortgage, and it could not have been read in evidence against them under the general denial without proof of its execution. This point was settled by the unanimous decision of the Supreme Court in *Riser* v. *Snoddy,* 7 Ind. R. 442; hence, in the original opinion, it was not deemed necessary to restate it. These defendants, under that issue, had a right to prove its invalidity. *Earnhart* v. *Robertson,* 10 Ind. R. 8.—*Noble* v. *Epperly,* 6 *id.* 468.

What has been said in relation to the denial by *Curtis* of the execution of the mortgage, applies with still greater force to his denial of the acknowledgment. The suit is not against the party who executed that.

The whole question, then, upon the validity of the mortgage, came up on the trial under the general denial. The record recites—"And thereupon, the issues being joined in this cause, it is, by agreement of parties, submitted to the Court for trial, without the intervention of a jury, upon

the default heretofore taken as to the railroad company, and the proof submitted." It was necessary that that proof, on the part of the plaintiff, should, as to *Wright* and *Curtis*, show, *prima facie*, the execution of the mortgage. The acknowledgment appended to the mortgage did that; and the acknowledgment, *prima facie*, proved itself. 1 R. S. p. 235.—2 *id*. p. 91, § 281. The affidavit of *Curtis* as to it, amounted to nothing; 2 R. S. p. 41, § 75; certainly not more than the admission, at the same time, by the mortgagor, that it was acknowledged. It devolved upon the defendants, *Wright* and *Curtis*, to disprove the acknowledgment. The evidence for that purpose was such as we have stated it in the original opinion. But the certificate of the secretary of state of *Ohio* was offered in evidence under the following agreement:

" We agree that the within certificates may be used as evidence in this case without any other proof; and it is further agreed that the copy of the agreement between *Bundy* and the company in regard to the possession of the property, made part of the complaint, may be used in evidence the same as the original. [Signed] *Bundy, Smith, Newman* and *Siddall, Stuart, Corwine, Bickle* and *Morton*."

And it is contended that this agreement went to the legal effect of the certificate when in evidence, and not to mere preliminary questions arising in the minds of counsel, touching its admissibility, as to sufficiency of authentication, or whether the signer of the certificate was the secretary, &c.; but we think it clearly went alone to the latter, as did the stipulation to admit the copy of the agreement named instead of the original. What it proved when admitted was a question to be determined by the Court. It was but a link in the chain. It required another link, viz., an *Ohio* statute, authorizing it. On this point, we have seen nothing to induce us to change the opinion heretofore expressed. As to the appointments of notaries, in the language of Judge DEWEY, in *Harris* v. *Doe*, 4 Blackf. 376, touching papers in that cause, "we do not know that they were registered, or required by law to be registered in any

public office." It is only copies of papers authorized to be thus registered, that public officers can make evidence by their certificates. Here, the certificate in question is not even to a copy, but to the negation of a fact, which, if it existed, so far as the record shows, would not necessarily fall within his knowledge.

The Court found for the plaintiff on the general issue, which covered, as to these questions, the whole merits, and rendered final judgment for the plaintiff. If that judgment is not wrong, this Court cannot reverse it. It is manifestly right. And if the evidence is not all in the record, the presumption must be that it sustained the final judgment as rendered by the Court. This remark disposes of the question of the claim of *Wiggins & Co.* to a portion of the cars.

The mortgage involved was duly recorded in the counties of *Wayne* and *Henry*. It is inferable from the record that the principal office of the company in this state was in *Newcastle, Henry* county. It appears that the portion of the road operated—that on which the rolling stock mortgaged was used—lay mostly in the two counties above-named, as by the lease to *Wright & Co.*, executed subsequently to the mortgage, it is provided that the road shall be extended from *Anderson*, a point near the line of *Henry* county, north-westerly, in the direction of *Logansport.* It appears that the president and principal directors of the company in *Indiana* merged at the consolidation with the *Ohio* company in the new organization, resided at *Newcastle*, that the shops of the road were there, and the press for affixing the seal of the company, &c.

Counsel reply, in part, to this, by asking, very disingenuously, how can it be inferred that the principal office of the company was at *Newcastle*, when it positively appears that that office was in *Cincinnati, Ohio?* The Court said nothing about the principal office of the company. The Court asserted that it was inferable that the principal office of the company in this state was at *Newcastle*. The company may have several offices— one, in *Ohio*, may be the principal office of the company for the whole road, and

one of those in this state may be the principal office for
business within this state.   But the mortgage was re-
corded in the two counties in which the road appears to
have been then operated. The mortgage having been duly
recorded, was notice to all persons, and no estoppel arises.

Nov. Term,
1858.

WRIGHT
v.
BUNDY.

Equally disingenuous with the above-noticed remark, is
the following:

"It is suggested by the Court, as a circumstance weak-
ening the force of our testimony, that *Cincinnati* contains
a 'population of two hundred and fifty thousand inhabit-
ants.   How the Court can take judicial notice of that fact,
in view of the technical rule which it applies at the same
time in regard to the *Ohio* statute, and the source of no-
tarial commissions, we cannot very clearly see; and espe-
cially in view of the case of *Shaw* v. *Wood*, 8 Ind. R. 518,
in which this Court held that they did not know what *Cin-
cinnati* was."

It will be seen by quoting what was said in the case
cited, that the Court held no such thing.   This is the lan-
guage and holding of the Court:

"The only evidence that the note was made in *Ohio*, is
the fact that it is dated at *Cincinnati*.   That is not suffi-
cient.   We do not know what *Cincinnati* that is.   *Hutch-
ins* v. *Hanna* and another, at this term."

In the case of *Hutchins* v. *Hanna*, the Court held, Judge
STUART delivering the opinion, that where a note sued on,
was dated at *New York*, the state not being named, the
Court could not judicially know that the city of *New
York*, in the state of *New York*, was the place of date.
He says, "there is a *New York* and a *Philadelphia* in this
state." *Shaw* and *Wood* followed this case.   But if the
record had shown, in *Hutchins* and *Hanna*, which *New
York* was designated, as in this case it does which *Cin-
cinnati*, the Court might have presumed to apply, if neces-
sary, some geographical knowledge in the decision of the
cause.   Courts do not take judicial notice of the laws,
but they may of the general geography and history of
other states.   Ind. Dig. pp. 343, 595.

The form of the judgment is objected to.   It was not

Nov. Term, 1858.

excepted to below, nor objected to in the argument of the cause here. We see no objection to it. The money that may be derived from the sale of the property is to be paid into Court, to be subsequently applied under its direction. The sale may be of separate parcels under the judgment, and may cease when a sufficiency is sold to discharge the trusts. This direction may be yet obtained from the Court below, on motion, if desired.

*Per Curiam.*—The petition is overruled.

Counsel were the same as in the first hearing of the appeal.