CARL HAASTED, The (WALSH v.). See Case No. 17,113.

---

## Case No. 2,410.

### CARLISLE v. BUNDY.

[3 Wkly. Law Gaz. (1859) 297.]

Circuit Court, D. Indiana.

ENJOINING PROCEEDINGS IN STATE COURT.

[The sale of mortgaged property under a decree of foreclosure in a state court of concurrent jurisdiction will not be enjoined by a federal court at the instance of prior mortgagees who were not made parties to the proceedings in the state court.]

[In equity. Bill by George Carlisle and others, trustees, to enjoin a sale of mortgaged property directed by a decree of the state court.]

McLEAN, Circuit Justice. This bill is filed by George Carlisle, as trustee, who, with others, represents that under the law of Indiana of 1847 and 1848, the Newcastle and Richmond Railroad Company had power to negotiate loans, contract debts, and give liens on all property and effects of the company, and by a subsequent act of Jan., 1851, the company was authorized to borrow money, and issue bonds therefor, and to secure the payment thereof; to mortgage the road, income, and other property of the company, etc. That under the above and other acts of the legislature, the following mortgages were executed: (1) The Newcastle and Richmond R. R. Co., to Carlisle and Varnum, $300,000, on twenty-seven miles of the road, dated Feb. 7, 1852. (2) The Cincinnati, Logansport, and Chicago R. R. Co., to Carlisle, Hamilton and Riggs, 300,000 pounds sterling on the whole road, dated 1st April, 1853. (3) To Bundy and White, for $500,000, by the Cincinnati and Chicago R. R. On the 31st of August, 1854, the Cincinnati, Logansport and Chicago R. R. Company, by an act of the legislature of the state, consolidated with the Cincinnati and Chicago Railroad Company. In April, 1858, Geo. Carlisle filed a bill in this court, alleging that the interest had not been paid on the bonds, secured by the deed of trust to him, Riggs, and Hamilton, praying for a decree for the sale of the road and machinery, etc. In November, 1854, the consolidated company executed a deed of trust to Martin L. Bundy, conveying to him some real estate, and a number of locomotives and cars, for passengers and freight, as a security for the payment of certain debts, which the directors of the company had incurred to stock the road. The debts thus contracted by the company and others, to put the railroad in operation, are alleged to have amounted to eighty thousand dollars. And the trustee Bundy, on a failure to pay the debts as they fell due, by the company, was authorized to sell the property, specified in the deed of trust, "or so much thereof as shall become necessary to pay the debts provided for in the deed of trust."

It is averred that none of the property conveyed to Bundy was owned by the company when the deed of trust was executed to Carlisle, Riggs, and Hamilton. The cars embraced in the Bundy mortgage are alleged to have been in an unfinished state, and in the possession of the manufacturers, and had never been placed upon the road when this deed of trust was executed.

In August, 1857, Bundy commenced a suit in the Wayne circuit court of Indiana, for the purpose of recovering possession of the property conveyed to him by the deed of trust, and which, by the deed, was required to be sold, and this property, he alleged in his bill, to be in the possession of J. W. Wright & Company, who claimed it under a lease from the company, executed in October, 1857, some two years after the deed of trust to him. In this suit, Bundy did not claim a judgment against the railroad company, or against those who claimed the property as lessees, and who had possession of it; but he prayed

for a decree that the possession of the property should be given to him, that he might proceed to sell, and apply the proceeds in payment of the debts specified in the deed of trust. J. W. Wright & Company admitted they had the possession of the property, and they set up numerous defences to the suit. But Carlisle, and the other trustees associated with him, were not made parties, and it is alleged that the only point before the Indiana court in that case, in regard to the property, was the right of Bundy under the deed of trust. In their opinion, the Wayne circuit court say this suit is brought by Martin L. Bundy, the trustee, to obtain a foreclosure and order of sale upon a trust mortgage against the Cincinnati and Chicago Railroad Company—the mortgagor and Wright and others, her lessees, having in possession and use the property covered by the trust mortgage. The railroad company made default. In the further progress of the case, the court say: "Subsequently the railroad company—Bundy being one of the directors—leased the trust property mortgaged to Wright and others for five years. Before the expiration of the five years, the claims of the creditors, the beneficiaries of the trust mortgage, became due, were not paid, and the trustees, for their benefit, obtained an order for the sale of the property. The lessees pleaded the act of the trustee in participating in the lease to them as an estoppel in pais of his right to foreclose and sell the property; and the court say, we do not think the estoppel arises upon the facts." And the court in conclusion, say, the "lessees had notice, by the record of the trust mortgage, of the extent of interest possessed by the respective parties, and of the liabilities to which they might be exposed of having the property taken from them, in the contingency that the secured creditors should not be otherwise paid, and should press the collection of their claims," etc. "The result," say the court, "at which we have arrived as to the validity of the plaintiff's claim, under the trust mortgage, renders it unnecessary that we should inquire into the validity of the lease to Wright and others." An elaborate opinion was pronounced in the supreme court, to which the above cause was appealed from the circuit court of Wayne county [Wright v. Bundy, 11 Ind. 398], and on a petition for a rehearing in the supreme court the case was again elaborately considered, and the rehearing was denied [Same v. Same, Id. 409].

The mortgage or deeds of trust were issued to Carlisle & Varnum in 1852, and in 1853 to Carlisle, Hamilton and Riggs. Those issued to Bundy and White, the date is not stated. But the first, second, and third mortgage also, it is presumed, were issued prior to the Bundy mortgage, which is called the fourth mortgage. This was dated in November, 1854. In August, 1857, suit was brought on the Bundy mortgage in the Wayne circuit court. The suit by Carlisle and others on the

original trust bonds was commenced in April, 1858. From this it appears that the suit on the Bundy mortgage was brought in the Wayne circuit court of Indiana, some nine months before the commencement of Carlisle's suit in this court. From the record of the Wayne circuit court, there was no appearance by Carlisle or any one else in the Bundy case, except by Wright & Company, as the lessees of the railroad company. That the Wayne circuit court of Indiana is a court of general jurisdiction is admitted, and it appears the suit in that court was prosecuted to a final decision, and that Wright & Company took an appeal to the supreme court of the state, and that on the 25th December, 1858, a final decision was given affirming the decision of the Wayne circuit court [Wright v. Bundy, supra]; and that afterwards, on a petition for a rehearing, the case was again elaborately considered and the motion was overruled [Wright v. Bundy, supra]. And it further appears the validity of the Bundy mortgage was the turning point of the decision in that case, both in the circuit and supreme courts of the state.

There is no principle better settled than that when courts having concurrent jurisdiction, the one which first exercise jurisdiction by a service of notice has possession of the case, and may decide it. It is also a well-settled principle that no court which is not vested with an appellate power can modify or reverse a decision of a court, when jurisdiction has attached. These principles are not controverted, but admitted by the counsel in the case. It is also an admitted principle, that an individual or a corporate body, though interested in a suit, if not made a party, his rights remain unaffected by the procedure. There are cases where a court, having jurisdiction of the person, may coerce him to do certain things which justice requires, though not strictly within its jurisdiction; as where a conveyance of land may be required to be made out of the state, or where an individual acts in different capacities, as representing distinct interests. Bundy, it is alleged, acts as co-trustee with White of the third mortgage; and he is sole trustee of the fourth mortgage, is plaintiff in the Wayne circuit suit, is special commissioner of that court to sell, and is co-defendant with White in the Carlisle suit to foreclose, and in that capacity has answered and filed a cross bill; and that he is defendant in the Carlisle suit to foreclose in his capacity of trustee of the fourth mortgage. In answer to these facts, in regard to the fourth or Bundy mortgage, it is enough to say, that the suit on that instrument having been first commenced in the Wayne circuit court, which exercises a concurrent jurisdiction with this court, its decision must stand on all matters properly adjudicated, unless reviewed and reversed by the appellate court of the state. It is true, in his supplemental bill, Carlisle alleges that Bundy is about to take posses-

sion of and sell the machinery embraced in the deed of trust to him; and the same machinery is covered by the deed of trust to Riggs, Hamilton and himself, and that the sale of the property would be an irreparable injury to the road. The decree in the supreme court of Indiana in favor of Bundy is in the nature of a proceeding in rem, and requires him, under the deed of trust, to sell the property, and pay the debts specified. We are bound by this decree, and it is difficult to perceive how we can in any manner interfere by an injunction without a direct conflict with the Indiana court. An injunction which shall not restrain the action of that court, will answer no purpose. It is said we may act upon the person of Bundy without interfering with the Indiana court. How this can be done is not perceived. If we say that Bundy shall not sell, and nothing short of that will effect the purpose, we nullify the action of that court. We say that he shall not do the thing which the supreme court of Indiana have commanded him to do.

If judgment at common law had been rendered for money, this court might have protected any property on which there was a prior and specific lien, from execution. But when the decree is entered for the sale of specific property, it remains in the custody of the court, and it cannot be reached by an injunction, or other proceeding, except by a court having an appellate power.

It is said that the question between Carlisle and Bundy, now pending before this court, was never directly or indirectly passed upon by the Wayne circuit court; that it is a new case, and between different parties; and that it is not proposed to disturb a single question settled by that court. And it is alleged that the relative rights of Carlisle and Bundy were not determined by the supreme court of Indiana, and could not be, as Carlisle was not a party in that suit. It must be admitted that the bill filed by Carlisle, and those associated with him, was filed in this court, primarily against the Cincinnati and Chicago Railroad Company, to enforce the payment of interest which had become due and was not paid, and, if need be, to foreclose the mortgage on the road and sell it, including its entire property; and that Carlisle filed a supplemental bill subsequently, in reference to the mortgage set up by Bundy, alleging it to be fraudulent and void. It is not denied that this Bundy mortgage purports to cover the entire property which was brought before the Wayne circuit court of Indiana, and was appealed to the supreme court of the state, which affirmed the decree of the inferior court. And the property embraced in the mortgage was ordered to be sold, by the final decree of the supreme court. And it seems to be admitted that, under the mortgage, the property will not sell for the amount of the indebtment claimed. That a subsequent incumbrancer may be made a party to a suit on a prior mort-

gage, may be admitted. But the question made is whether a subsequent incumbrancer, as in the case of Bundy, on a mortgage of personal property, in which the items are enumerated, and directed to be sold, by the decree of a state court, can be enjoined by a federal court. I cannot perceive how this can be done. Under the same jurisdiction, there could be no difficulty in staying the proceedings. But by this court no step can be taken which would not bring it directly in conflict with the state court. To issue an injunction against the person of Bundy, without interfering with the decision of the supreme court of Indiana, is impossible. The decree is the final action of that court, through Bundy, its trustee; and should he attempt to prevent or defeat the purposes of the decree, he would be liable to be attached and punished by the state court, and there is no power in this court to protect him. We claim only a concurrent jurisdiction with the state court; and in this case the jurisdiction of the state court attached before Carlisle filed his bill in this court. If, as above remarked, a judgment at law had been entered against the railroad company, and an execution under that judgment had been levied, and property mortgaged, the lien might be asserted in this court. But this would not call in question the validity of the decree of that court, as the levy, being the act of the officer, might be enjoined. But Carlisle, not being made a party in the act of the state court, cannot be materially affected by that decision. If he have prior liens to the Bundy mortgage, they may be enforced against the specific property, into whatsoever hands it may come. There could be no doubt as to the notice from the recorded mortgages, and the suits in this and the state courts.

In the case of Coe v. Hart [Case No. 2,942] this court held, where several passengers and other cars had been constructed and delivered to the railroad company, that the lien on subsequently acquired property attached, under the mortgage; and, again, where a bridge was constructed over the Muskingum, at Zanesville, on the Wilmington road, it was held that the constructor of the bridge might refuse to deliver the bridge to the railroad company, unless security was given on it for the balance due, and that a mortgage so given was valid. This ruling was not founded on a mechanic's lien, or any statutory provision, but on the principle of the common law that the constructor of a bridge, a locomotive, passenger cars, or any other structure for the road, there being no special contract for the payment of the work, the constructor may refuse to deliver it to the railroad company, until it shall be paid for, or the payment satisfactorily secured. But where no special lien is given on the work, and it is delivered to the railroad, the constructor can only be considered as a general creditor of the company. I know no other principle on which proper protection can be afforded to

these great improvements, which have added a hundred per centum or more to the general products of our country, and to the commercial facilities afforded by them. When a sale of the road shall be indispensable, it should take place under such circumstances as to enable a court to adjust the equities between the respective parties. Mr. Carlisle may stand upon his liens, or he may, at his option, investigate the merits of the Bundy mortgage in the state court. The prayer for an injunction is refused.