Aspinwall et al. *v.* The Ohio and Mississippi R. R. Co. et al.

*R. R. Davidson*, for the appellant.

———— ◆◆ ————

ASPINWALL *et al. v.* THE OHIO AND MISSISSIPPI R. R. Co. *et al.*

RAILROADS — CORPORATION — CONTRACT.— A corporation, created, with a special charter, by the Legislature of *Indiana*, in which the corporation is made to consist of certain directors and their successors, with power to construct a railroad in said State, and with authority, in connection therewith, to own and manage certain property in the State of *Ohio*, cannot, by reason of the latter authority, change its domicil to the latter State.

Nor could it remove its domicil to the State of *Ohio*, merely because that State had given it authority to act therein, unless it had been also granted power so to do by the Legislature of *Indiana*.

And where such a corporation receives subscriptions to its capital stock in *Indiana*, payable in such installments and at such times as the corporation may determine, and then migrates to *Ohio*, and there

establishes its office and performs all its corporate acts, and determines in what installments and at what times said subscriptions shall be paid, and requires them to be paid at its office in *Ohio*, such subscriptions can not be collected, because such corporate acts are inoperative and void.

APPEAL from the *Knox* Circuit Court.

PERKINS, J.—*Aspinwall* and others, assignees of the *Ohio* and *Mississippi* railroad company, sued *Henry D. Wheeler* on a subscription of stock of the following tenor, viz:

"We, whose names are subscribed hereto, do promise to pay to the President and Directors of the *Ohio* and *Mississippi* railroad company, the sum of 50 dollars for every share of stock set opposite our names respectively, in such manner, proportions and times as shall be determined by said company in pursuance of the charter thereof; Provided, that the payments on the stock shall only be applicable to the construction of said road from *Vincennes* eastwardly, except so much thereof as may be necessary for incidental and necessary expenses.

HENRY D. WHEELER, 50 shares: 2500 dollars."

The charter of the company is a special one, granted under the old Constitution, and the first section of it declares that *John Law* and certain other persons named, "and their successors in office, duly elected as hereinafter provided, are hereby constituted a body corporate and politic, by the name of The *Ohio* and *Mississippi* railroad company," with perpetual succession, &c., with powers, &c.

The charter, then, constitutes the directors of the company the corporation.

The complaint avers that the corporation had determined the installments and times in which the stock subscription

should be paid; had fixed the place of payment at the office of the corporation in *Cincinnati, Ohio,* and had given notice, &c.

The defendant answered that the corporation, directly after its creation, left the State of *Indiana* and migrated to *Ohio,* where it established its office, and where all its subsequent corporate acts had been performed, including those of fixing installments and times of payment of stock, &c.; and that no acts of the corporation, since its first migration, had been performed in *Indiana.*

The plaintiffs replied that the Legislature of the State of *Ohio* had recognized and adopted the charter granted in *Indiana,* as authority to the corporation to act in *Ohio,* in extending the railroad to *Cincinnati,* in that State.

The object for which the corporation was created in *Indiana* is thus expressed in the charter, in section 13:

"That the president and directors of said company shall be and are hereby invested with all · the rights and powers necessary and proper for the survey, location, construction and repairing of a railroad on the most direct and practicable route between *Lawrenceburg,* on the *Ohio* river, and *Vincennes,* on the *Wabash* river, having in view the interests of the company and the convenience of the citizens of the State of *Indiana,* and extend eastwardly on the most direct practicable route to the city of *Cincinnati,* in the State of *Ohio,* and westwardly on the like most direct practicable route, through the State of *Illinois,* to the city of *St. Louis,* in the State of *Missouri,*" &c.

The Court below sustained a demurrer to the plaintiffs' reply, and the defendant had judgment.

The point ruled by the Circuit Court was, that the acts of the *Indiana* corporation, performed in *Ohio,* were void as to the stockholders in that corporation.

We think these two propositions may safely be asserted:

Aspinwall et al. *v.* The Ohio and Mississippi R. R. Co. et al.

1. The authority given by the Legislature of *Indiana* to the corporation created by that body to own and manage property in *Ohio*, did not include in it the authority to the corporation to change its domicil to that State.

2. The authority given to the *Indiana* corporation, by the Legislature of *Ohio*, to act in that State, did not confer upon it, in the absence of authority from *Indiana*, the right to migrate to that State as an *Indiana* corporation. State laws, as a general proposition, do not operate extra-territorially.

It may be here observed, as a matter of fact, that the *Indiana* charter of the *Ohio* and *Mississippi* railroad company does not, in terms, locate that corporation anywhere; and the question, therefore, comes fairly and directly up, must a corporation, at common law, or upon general principles, have a local habitation as well as a name? Or could a banking or trading corporation, created by *Indiana*, establish itself here for a time, then close its office in this State, and, with its charter and seal and other paraphernalia, if it had any, depart to *Ohio*, and, resting there for a time, again move further east, locating successively awhile in *New York*, in *England*, in *Russia*, in *China*, and, at last, settling down permanently in *Japan?* And, after being settled in *Japan*, could the corporation make an order that the *Indiana* stockholders should pay installments, due and to become due, at the office of the company, in *Jeddo*, give notice of the order in the *Jeddo* Gazette, and then, on failure of payment, sue for recovery, &c.?

Turning to Grant on Corporations, an English book, we find it states on side page 14, that "the old law was that every corporation must be constituted [in the charter] of some place. But it is presumed that this rule has long been obsolete, if it ever held good, except in the cases of corporations entrusted with some local jurisdiction, or with powers and privileges, the exercise of which was from their nature connected with some locality."

Again, on side page 54, it is said that, in naming the place of a corporation, geographical accuracy need not be observed, and that " it is not now necessary that a corporation unconnected with the administration of justice, and not holding land, should be named of a place."

And, to side page 147, we find this note:

"But it seems unsettled whether an attorney may be authorized to execute the lease [of real estate] on behalf of the corporation, either by affixing to it his own seal, or the corporation seal, *on the land* out of England, as it might be convenient to do in some cases, *ex. gr.*, if the corporation held land in the colonies; *vide* Moore, pl. 191, Dyer, 132, a; Sheph. Touchst. 57. If the name of the lessee were left in blank when the deed was sealed, it would be void, 6 M. & W. 214. Also, the presumption appears to be, that the common seal is irremovable from the domicil of the corporation, Jenk. Cent. 10." So much for the English common law upon the point.

Corporations, in this country, are treated as having domiciles or residences in determining the question of jurisdiction as between the State and *United States* Courts, and, also, upon general principles. See the cases collected in Peters' U. S. Dig., and in Curtis' U. S. Dig., h. t. And we think we may safely assert that, in the *United States*, where corporations are created by State Legislatures without specifying a locality in their charters, they are regarded as, by implication of law, local to the State in which they are created, and must have their business locations therein. *The Bank of Augusta* v. *Earle* is a leading case upon this proposition. It is there said: "It is very true that a corporation can have no legal existence out of the boundary of the sovereignty by which it is created. It exists only in contemplation of law, and by force of law; and where that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to an-

Aspinwall et al. *v.* The Ohio and Mississippi R. R. Co. et al.

other sovereignty. But, although it must live and have its being in that State only, yet it does not by any means follow that its existence there will not be recognized in other places; and its residence in one State creates no insuperable objection to its power of contracting in another." This doctrine has been adopted by text writers on corporations, and by Courts in judicial decisions. The cases are cited, a part of them, in 2 Kent, note to top page 275, 10 edition, and a part of them in Ang. and Ames on Corp., note to section 104, 6 Ed. See also *Wright* v. *Bundy*, 11 Ind. 398; and *Ohio, &c. Co.* v. *Wheeler*, 1 Black U. S. R. 286. And it is held that corporate acts performed by the body of the corporation while sitting out of the State which creates it, are void and of no effect. See as to the power of validating such acts by subsequent meetings of the corporation in the State of its creation, *Freeman* v. *Machias Power and Mill Co.*, 38 Maine Rep. 343.

The State by agent may contract out of the limits of the State; but could the Legislature hold a session out of the State, and at such session legally appoint the agent?

The case of *Wright* v. *Bundy*, *supra*, accords with the present in principle. The difference is in the facts. In the former the stockholders constituted the corporation, the directors being but its agents. In the present case the directors are constituted the corporation by the charter.

Upon authority, then, we feel constrained to hold the corporate acts in this case, which were performed by the body of the corporation, in a foreign State, of no validity.

*Per Curiam.*—The judgment below is affirmed, with costs.

*Samuel Judah*, for the appellants.

*McDonald & Porter, John Baker* and *W. E. Niblack*, for the appellees.