## WILLIAM J. MILLER & al. versus ROBERT P. EWER.

All votes and proceedings of persons professing to act in the capacity of corporators, when assembled beyond the bounds of the State, granting the charter of the corporation, are wholly void.

It is incumbent on the demandant, claiming title under a deed from a corporation, executed by one in the character of its agent, to prove that the corporation, by a legal vote, had authorized such person to make the conveyance.

But such corporation, duly organized and acting within the limits of the State granting the charter, may by vote transmitted elsewhere, or by an agent duly constituted, act and contract beyond the limits of the State.

An authority given in the charter, in general terms, to certain persons to call the first meeting of the corporators, does not authorize them to call such meeting, at a place without the State.

THE facts in this case, so far as they relate to the questions argued or decided, are found at the commencement of the opinion of the Court.

Written arguments were furnished to the Court; but they are too extended to admit of publication, as a part of any one case. Extracts from them, only, are therefore given.

*Moody,* for the plaintiffs.

May a corporation established by the law of one State and holding real estate therein, at a meeting held in another State, pass such votes and adopt such proceedings, authorizing the proper persons to convey said real estate, as will render a conveyance in pursuance of said votes, valid to pass the title of said company ?

It is undoubtedly true, that this question has not been the subject of judicial decision in this State; nor has the identical proposition, been decided any where. Nor indeed is there any considerable number of adjudged cases, which have a direct bearing on the question. Still it is so far from being one, the solution of which is to be evolved solely by the exercise of the reasoning faculties, and the application of the judgment in the use of legal principles, indirectly only bearing upon it, and unassisted by the authoritative enunciations of legal treatises and

solemn judicial decisions, that a flood of light is in fact thrown upon it, by both.

If it were however a question new in principle, there are forcible, if not numerous reasons for settling it affirmatively.

The purpose and object of the Legislature is to empower associated persons, to conduct certain business processes with the unity and simplicity of operation of an individual actor, in an authorized name, and in that name to take and convey property, real and personal; the capacity to do which Chancellor Kent says is of the essence of a corporation. 2 Kent's Com. 224.

The charter, in express terms, gives the right to hold the first meeting whereever those calling it saw fit. Its words are, " are hereby empowered to call the first meeting at such time and place, and in such manner as they think proper."

And where is the authority or reason, even, for putting any other than the broadest construction upon these words, which they grammatically bear.

Certainly no public policy forbids it, no argument of convenience forbids it, no danger of conflicting sovereignty forbids it, since the operation of the vote is confined to property within the State.

On the contrary, to allow its validity is the only way of preventing a gross, practical injustice. And if the first meeting may be held out of the State, any other may well be. It is true that subsequently to this charter, this State passed a law requiring corporations to keep the office of its clerk, and its records and papers, at some place within this State.

But even this law did not require its meetings to be held in the State.

Is the argument that the corporation has no legal existence out of the sovereignty where it is created, and therefore cannot act beyond its limits ?

The answer is, that is only true with respect to the foreign sovereignty, where it undertakes to act, and it is at the option of that sovereignty, to recognize its acts or not; it is an ar-

gument for that sovereignty, and not the one which created it.

The State that gave it a charter gave it being, recognized its existence in general terms, acknowledged the validity of its acts within the sphere of its powers and is bound in good faith ever so to recognize the one and acknowledge the other without regard to the place of its action, since its recognition was general, since it imposed no terms of place where it was to act by vote.

These are legitimate and forcible considerations, to show *a priori*, that validity should be given to this conveyance. Happily the settled law, so far as it goes, is strongly in affirmance of the same position. By the formation of a corporation a legal or artificial person is substituted for a natural person, and where a number of persons is concerned the property of individuality is given to them. Angel & Ames on Corp. 64. (2d Edit.) A corporation is a person for certain purposes in contemplation of law. *United States* v. *Amedy*, 11 Wheat. 412 ; *Beaston* v. *Farmer's Bank of Del.*, 12 Peters, 135. And has the same capacity to buy and sell as an individual. 5 Ham. R. 205. Like natural persons this artificial person may make contracts and perform acts within the scope of its powers, in States or counties where it has not its residence, and by the comity of nations and of states its acts are not merely recognized, but may be enforced. *Runyan* v. *Coster*, 14 Peters' R. 122 ; *Bank of Augusta* v. *Earl*, 13 Peters, 519. I refer the Court also to many cases cited by Angell & Ames, page 208, note 1. A corporation within the scope of its powers may agree to do any act at any place. *Bank of Utica* v. *Smedes*, 3 Cowan, 684 ; *McCall* v. *Byram Man. Co.* 6 Conn. R. 420.

In all these cases the objection to the validity and enforcing of the acts of the corporations was, that within those States where they were not chartered they could not act, they could not contract, they could do nothing, because they were not in *esse*, they had no legal existence, they were dead, they were precisely as if they had never been, and this certainly is the

utmost of the objection that can be made to this vote and the only form in which it can be put.

Indeed it seems very like an absurdity to say that a State shall recognize the existence of a foreign corporation and enforce their contracts made in it, and in the same breath to say, that the State of their creation shall deny the one and repudiate the other; the identical objection existing in both cases and no other. But there is an adjudicated case, which if it comes no nearer to this in principle than those I have cited, and I cannot imagine how one could, yet comes nearer to the precise point involved here. It is a case referred to in Angell & Ames, 63, 395, 396, as their authority for the position that private corporations are not restricted as to the residence of their members, or the place at which their meetings are to be held and their affairs to be conducted. *McCall* v. *Byram Man. Co.* 6 Conn. R. 428.

Why have the Courts so many times decided that proof of the exercise of corporate powers and performance of corporate acts in a corporate name, dispenses with the necessity of record proof and proof of regular actions by meeting after a legal organization, in respect to the holding and the conveyance of property? 12 Wheat. 71 ; 2 Fairf. 22 ; 3 Wend. 296 ; 8 Greenl. 365. Why have they decided that those acting as officers of corporations are presumed to be rightfully in office ? that acts done by corporations which presuppose the existence of other acts to make them legally operative are presumptive proofs of the latter ? Angell & Ames, 222 ; *Bank of U. S.* v. *Dandridge*, 12 Wheat. 83, 87 ; 14 Johns. R. 118 ; 12 Wheat. 70. Why decided when corporations have gone into operation and rights have been acquired under them, every presumption should be made in favor of their legal existence? *Hagerstown Turn. Coal Co.* v. *Creeger*, 5 Har. & Johns. R. 122.

Why decided that when the common seal appears to be affixed, and the signatures of the proper officers are proved, courts are to presume that the officers did not exceed their authority, and the seal itself is *prima facie* evidence that it

was affixed by proper authority, and the contrary must be shown by the objecting party? Angell & Ames, 158, and cases cited.

That the acts of the directors are sufficient to bind the company, is fully settled. 8 Wheat. 338, 357 ; 9 Wheat. 738 ; 12 Wheat. 64 ; 4 Cowen, 645, 659 ; 19 Johns. R. 60.

A corporation certainly could not set up such an objection to a deed of theirs.

The defendant claims to hold under Thomas as grantee of the corporation, and, therefore, cannot take advantage of this defect, if there be one. 2 Hill's South Car. Rep. 378.

Again : — Having shown the existence of the corporation and that it is a body which can take and convey real estate, and a deed duly executed by the officers of said corporation, is it incumbent on the plaintiffs to do more, who are not the immediate grantees of the company, and cannot be supposed to have access to the records of said company? *Lumbard* v. *Aldrich,* 6 N. H. Rep. 269.

*T. Robinson* and *Hinkley,* for the defendant.

The Bluehill Granite Company was never in such legal existence as would enable it to receive, or transmit a title to real estate.

It is argued, and authorities are cited by the plaintiff's counsel, that proof of the grant of the charter and corporate acts are sufficient to raise the presumption that the corporation was duly organized and its proceedings regular.

It is apprehended, that it is sufficient to answer, that if the plaintiffs had shown so much, and no more, a presumption might have arisen, that might have required rebutting proof on the part of the defendant; but as they have not rested their case upon such testimony, but have spread before the Court, all of the proceedings by which it was attempted to organize a corporation, and sustain its acts under the charters, they have themselves taken away the grounds of such presumption ; and if those proceedings are insufficient, or not in accordance with the requirements of law, they fail to sustain the plaintiff's case.

A corporation is a creature of the law, and is constituted by the exercise of the sovereign power on the one part, and the action of the corporators in pursuance of the rules prescribed by that power. If there be a failure in the expression of the sovereign will by its appropriate organs, or in the manner in which the sovereign power has prescribed for the exercise of that will, then the corporate body does not begin to exist. If the corporators do not accept of the grant, or should fail to organize the corporation in the manner prescribed by law, there is a failure to give legal vitality to the body corporate.

Our first objection is, that the records do not show that the first meeting was called by the persons appointed for that purpose by the charter. This fact the records should have shown. *Middlesex Husbandmen* v. *Davis*, 3 Metc. 133 ; *Chester Glass Co.* v. *Dewey*, 16 Mass. R. 94.

That the first meeting should be called by the persons designated, is an important incident of the grant. It is the only guarantee, that the rights and convenience of the corporators shall be consulted.

The next objection is, that the place where it was attempted to organize the corporation, and where the subsequent meetings were held, and especially the votes relating to the land in question, was out of the jurisdiction of the State.

The charter introduced and relied upon, is a grant from the sovereignty of Maine. The corporators must in the organization and subsequent conduct of the corporation, conform to the laws of this State. Corporate powers are to be strictly construed. 2 Kent's Com. 298. .

Is there any law of the State authorizing corporations to be organized and hold their meetings out of the State ?

None has been pointed out, and a strict construction of their powers, prevents any such authority to be derived from any supposed convenience to corporators, or by implication from any general or indefinite language used in the charter itself.

The parallel that has been run between a natural person and a corporation does not hold good in all particulars ; for

while the life and rights of the individual are not confined to place, but is a constituent part of the person, whereever it may go, the corporate power or legal vitality always remains within the sovereignty creating it.   The corporators, as natural men, cannot take it abroad with them.   It pertains to the sovereignty itself; is a legal enactment, a statute, and consequently, is nothing without the constantly sustaining power of the State.

But it is contended that whatever corporations may do within the scope of their corporate privileges, out of the jurisdiction of the State, and which is of no effect where the vote is passed, is valid and binding when brought within the State.

Without the authority of positive enactment, where does the counsel find ground for this principle ?   Analogy is against him.   An act of incorporation empowers particular individuals to do certain specified things in a prescribed manner.   The laws establishing our courts, do not, in so many words, say that the Judges shall not hold their terms in Boston ; yet, it is apprehended, that if a district judge should render a judgment there, and award an execution, to be enforced at home, this Court would hardly sanction the proceeding.   The selectmen are authorized to call town meetings.   The statute does not say that the meetings shall be held within the corporate limits. Will it be contended, that if the selectmen of Bluehill should call a meeting of its inhabitants at Portland, and money should be there raised by taxation, such tax would be binding ?

It is further contended, that the charter actually gives the power exercised by these corporators of completing the construction of the corporation by an organization in New York.

The language of the charter is, " That Pearson Cogswell and Jonas L. Sibley are hereby empowered to call the first meeting of said corporation at such time and place, and in such manner, as they think proper."   What was the meaning and intention of the Legislature in the use of this general language ?

We contend that some reasonable construction should be

put upon the language of the charter, and that the intention of the Legislature is the proper rule to be adopted in such construction. *Gore v. Brazier*, 3 Mass. R. 523, 540; *Pearse v. Whitney*, 5 Mass. R. 380, 382; *Stanwood v. Pierce*, 7 Mass. R. 458; *Gibson v. Young*, 15 Mass. R. 205.

The Legislature was granting a charter, for all that appears in it, to citizens of this State to do business within the State. It was establishing a corporation at Bluehill, and by the general law the organization would have been requisite within the county of Hancock.

The supposition that the organization could be effected out of the State, is incompatible with the then existing laws. The same charter provides that the corporators "shall be subject to all the duties and requirements incident by law to similar corporations." The statute of 1821, chap. 137, required that corporations of this description should " choose a clerk, who should be sworn by a justice of the peace, to the faithful discharge of his duty, and who shall record all votes of the corporation in a book by him kept for that purpose."

The 3d sec. of the act concerning corporations, approved Feb. 16, 1836, only a few days previous to this charter, provides that the property of a stockholder to the amount of his stock may be taken on an execution against the corporation; and the 4th sec. provides for the service of such execution by an officer of this state, — and in a certain contingency the officer is to leave a notice with the clerk of the corporation, thereby implying that the clerk of the corporation is within the precinct of some officer of this State. The 6th sec. corroborates and strengthens this implication, by requiring "the clerk of said corporation, on demand, to furnish the officer having the execution against the corporation, with the names and places of residence of the stockholders, who may be liable as aforesaid."

The authorities cited for the plaintiff almost entirely relate to the ability of corporations to contract.

They usually contract through agencies; and the comity of States and Nations enforces contracts so made. These agen-

cies are composed of boards of directors, or of general or special agents duly authorized by vote of the stockholders. Sometimes the appointment of agents and even officers of the corporation is committed to the directors. But in all cases the source of power is in the stockholders, acting with, and sustained by the sovereignty which has created the corporation.

The case which the counsel seems to rely upon with the most confidence, (*Bank of Augusta* v. *Earl*, 13 Peters, 519,) sustains this view.

The opinion of the Court was drawn up by

SHEPLEY J. — This is a writ of entry brought to recover a tract of land in the town of Bluehill, upon which a granite store has been erected. The demandants derive their title from the Bluehill Granite Company, and introduce a conveyance by deed of mortgage, of a tract of land, including the premises demanded, purporting to be executed by that company on April 6, 1837, by its president, John S. Labaugh, and its secretary, David E. Wheeler, to Matthew C. St. John, in trust for the benefit of certain persons therein named. And conveyances from the trustee and the *cestues que trust,* assigning that mortgage to William I. Tenney. Also copies of a judgment recovered by William I. Tenney, against that company, and of an execution issued thereon, and of the return of an officer upon it, showing a seizure and sale of the company's right to redeem that mortgage to William I. Tenney; and a deed of the same from the officer to him on June 2, 1840. And a deed from William I. Tenney to the demandants, made on June 29, 1843.

To prove that the president and secretary of that company were authorized to make and execute the mortgage to Matthew C. St. John, the records of the company were introduced; and the charter granted by an act of this State, approved February 29, 1836. The records of the board of directors were also introduced. It appears from those records, that a meeting of the corporators was called for the organization of the corporation, under its charter in the city of New York,

and that the charter was there accepted, and the officers of the corporation, president, secretary, and directors were chosen. And at a meeting of those directors, held in that city on April 6, 1837, the president and secretary thus chosen, were authorized by vote to make and execute the conveyance in mortgage, to Matthew C. St. John. There is no proof, that any meeting for the organization of the company, or for the choice of its officers, has ever been holden in this State. There is proof that the company, by a person acting as its agent, transacted business in this State, during the years 1836, 7 and 8.

It is contended, that the existence of the corporation is sufficiently proved by the introduction of its charter, and by the testimony, showing the transaction of business under it.

If this be admitted, the demandants must proceed further, and show that the persons who executed the conveyance in mortgage, were legally authorized to do it. If directors of the corporation, legally chosen, might transact business as such by vote of the board, at a meeting held in another State, and might authorize persons to execute a conveyance of real estate, yet it would be necessary, to show that such persons were legally chosen directors, before any conveyance made by their direction, could be considered as legally made.

The demandants must recover upon the strength of their own title, not because the tenant does not exhibit a legal title; and their right to recover will depend upon a decision of the question, whether the corporation has authorized any board of directors or other persons to make that conveyance of its estate.

There are a variety of corporations. It will only be necessary on this occasion, to speak of one class of them, corporations aggregate, composed of natural persons. It is often stated in the books, that such a corporation is created by its charter. This is not precisely correct. The charter only confers the power of life, or the right to come into existence, and provides the instruments by which it may become an artificial being, or acting entity. Such a corporation has been well defined to be an artificial being, invisible, intangible, and existing

only in contemplation of law. The instruments provided to bring the artificial being into life and active operation, are the persons named in the charter, and those who by virtue of its provisions, may become associated with them. Those persons or corporators, as natural persons, have no such power. The charter confers upon them a new faculty for this purpose. A faculty which they can have only by virtue of the law, which confers it. That law is inoperative beyond the bounds of the legislative power, by which it is enacted. As the corporate faculty cannot accompany the natural persons beyond the bounds of the sovereignty, which confers it; and they cannot possess or exercise it there. Can have no more power there to make the artificial being act, than other persons not named or associated as corporators. Any attempt to exercise such a faculty there, is merely an usurpation of authority by persons destitute of it, and acting without any legal capacity to act in that manner. It follows that all votes and proceedings of persons professing to act in the capacity of corporators, when assembled without the bounds of the sovereignty granting the charter, are wholly void.

This is a familiar principle, when applied in analogous cases to persons, upon whom the law has conferred some power or faculty, which, as natural persons, they do not possess.

The power conferred by law upon executors and administrators, cannot accompany their persons beyond the bounds of the sovereignty, which has conferred it. Story has collected numerous cases, in note under section 512, in his treatise upon the Conflict of Laws, proving the doctrine to be established both in England and in this country.

The same doctrine prevails respecting the powers of guardians. *Williams* v. *Storrs,* 6 Johns. Chan. 357.

The same doctrine generally prevails in this country, while it does not in England, respecting the powers of assignees under bankrupt and insolvent laws. The doctrine is stated and discussed and the cases are collected by Story in his treatise on the Conflict of Laws, c. 9, § 405 to 417.

If the artificial being, called the Bluehill Granite Company,

may be considered as having existence and active life in this State, by proof of its acts within her limits, it will be still true that it cannot have existence without her limits, and of course cannot make choice of any officers or agents there. It may maintain a suit without those limits, but that does not imply its existence or presence there. It may also contract without those limits. Being within them, it may, acting *per se*, by vote transmitted elsewhere, propose a contract or accept one previously offered. And it may, by an agent or agents duly constituted, act and contract beyond those limits. But it can neither exist, nor act *per se* without them, except by the assistance of its officers or agents duly elected or appointed within them.

The constitution and powers of such corporations were perhaps more thoroughly discussed and fully considered, than ever before by any judicial tribunal, in the case of the *Bank of Augusta* v. *Earle*, 13 Peters, 519. C. J. Taney, delivering the opinion of the Court, says, "It is very true, that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law; and where that law ceases to operate and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation and cannot migrate to another sovereignty.

The cases of *McCall* v. *the Byram Manufacturing Co.* 6 Conn. R. 428, and of *Copp* v. *Lamb*, 3 Fairf. 314, are relied upon as deciding, that corporations whose charters were granted by one State, could hold meetings, pass votes, and exercise powers in another State.

The question presented in the former case, was whether the secretary of a corporation was legally appointed by the directors at a meeting held by them in the city of New York. The charter had been granted by the State of Connecticut. The decision was in the affirmative.

The directors of a corporation are not a corporate body, are, when acting as a board, but a board of officers or agents, and they may exercise their powers as agents beyond the

bounds, where the corporation exists.   It did indeed appear in that case, that all the meetings of the stockholders, and of the directors, were holden in the city of New York, but the capacity of the stockholders to act there, does not appear to have been examined and discussed.

In the case of *Copp* v. *Lamb*, the Court did not enter upon an examination of the question, whether the proprietors of common and undivided lands had, by virtue of an act passed by the Commonwealth of Massachusetts, power to organize and act as a corporation in another State.   It appeared that the land demanded in that suit, had been granted by a proprietary, which had acted as such more than forty years before that time.   And although the place of its first organization and action was within the State of New Hampshire, yet all its acts had been confirmed in a meeting held several years afterward, which does not appear to have been holden out of the Commonwealth of Massachusetts.   It was under these circumstances, that the Court said, that it did not feel authorized to declare, that the proceedings were illegal and void, because the first meeting for organization was held in New Hampshire. The ground upon which the decision was made, appears to have been, that it was not competent for a person claiming title under one of the proprietors, who had acted as an officer of the proprietary at that meeting, to deny, after so long a time and under such circumstances, the legality of the exercise of corporate powers.

" Corporations created by statute, must depend for their powers and the mode of exercising them, upon the true construction of the statute." *Runyan* v. *The Lessee of Coster*, 14 Peters, 129.   It is admitted in all the decided cases, that the sphere of action of a corporation is determined by the terms and intention of the legislation, by virtue of which it exists.   That legislation, if it be possible to avoid it, is not to be so construed as to exceed the sovereignty of the legislative power.   *Farnum* v. *Blackstone Canal Company*, 1 Sum. 47.   That clause in the charter of the Bluehill Granite Company, which author

izes two persons named to call the first meeting of the company, at such time and place as they may think proper, cannot receive such a construction, as would authorize them to call the meeting at a place without the limits of this State. Legislative bodies do not usually in their acts of legislation use language to limit their operation, but use general language, and the limitation is implied and inferred from the extent of the legislative power. The language used in that charter does not require any other construction or authorize the conclusion, that it was the intention to authorize that meeting to be held without the limits of the sovereignty. The consideration, that it could not have been its intention to attempt to encroach upon another sovereignty, by putting into action a corporation there, might be sufficient to call for a construction, which would not authorize it. There were, however, other enactments in this State, referred to in the charter as explanatory of the powers granted, which clearly exhibit the intention of the legislature, that the corporate powers should be exercised only within the State.

There is a clause in that charter, which gives the corporation all the powers and privileges, and subjects it to all the duties and requirements incident by law to similar corporations. The law thus referred to, is the statute law, regulating manufacturing corporations.

By the act then in force defining the powers and duties of manufacturing corporations, c. 137, they were authorized to make by-laws, not repugnant to the constitution and laws of this State. Were required to divide their property into shares. The evidence of title to these shares was to be certificates signed by the treasurer. Transfers of these shares were to be recorded by the clerk in a book to be kept by him for that purpose. The corporations were authorized to make assessments upon the shares, and the treasurer, when the holders failed to pay, was authorized to sell them in a manner prescribed by the act, and to make conveyances of them to be recorded by the clerk. The act of March 15, 1821, c. 60, § 31, then in force, provided, when an execution had been issued upon a

judgment recovered against a manufacturing corporation, and a demand had been made by an officer upon the president, treasurer, or clerk of the corporation, that the same might be collected by a levy upon the property or body of a corporator. By the act of Feb. 12, 1828, c. 385, then in force, the treasurer of such a corporation is required to give public notice in a newspaper printed in the county, where the corporation is established, and if none is printed in that county, then in one printed in an adjoining county, of the amount of the capital stock actually paid in.

The directors are prohibited from making any dividends of the capital until all the debts due from the corporation have been paid. The agent or officer having charge of its property was required to deliver to an officer having a writ or execution against it, the names of the directors and clerk, and a schedule of all its property including debts. It was made the duty of the clerk or person having charge of the books of the corporation to produce the same in court, when certain suits were pending. By the act of Feb. 18, 1836, other provisions were made respecting the mode of calling meetings, the liability of the stockholders, the mode of collecting debts from the property of the corporation, and requiring the clerk of the corporation to furnish an officer having an execution against the corporation, with a list of the names and places of residence of the stockholders.

It is obvious, that those provisions contemplated the establishment and action of manufacturing corporations to be within the State. That their meetings were to be called, and their officers to be chosen by virtue of the laws of the State, and of course where those laws were operative. That the officers and especially the clerk was to be found within the State ; and that he was to have the custody of the books and records within the State, to perform the duties required of him. All these enactments were obligatory upon the Bluehill Granite Company and its stockholders.

Whether the statute provisions of this State, and the inten-

tion of the legislative power, or the general rules of law respecting corporations, be examined, the conclusion must be the same ; that this corporation could hold no meeting for the election of its officers or for the regulation of its affairs, without the limits of this State. That all such meetings and proceedings were without right or authority and wholly void.

If there were no directors *de jure*, were there any *de facto* having authority to convey the estate of the corporation ?

Public officers, when appointed by the duly constituted authorities without any power to make the appointment, are regarded as authorized to perform their official duties, and their acts are to be regarded, as it respects other persons, as valid. *Commonwealth* v. *Fowler*, 10 Mass. R. 290. This is upon the principle, that they have been held out to the public by the duly constituted power as public officers, capable of performing certain public duties, and their acts are therefore to be regarded as valid. So when corporations have held certain persons out to the public as its directors or officers, those dealing with them as such and ignorant of their want of legal power, will be entitled to consider their acts as binding upon the corporation. And when there has been an informal or irregular exercise of an existing power of election, the officers so elected, until removed, are regarded as officers *de facto*, and their acts are obligatory upon the corporation.

But when the corporators have no power at all to proceed to an election, and when the officers must be considered as assuming to be such without any election, their acts cannot be binding upon the corporation, unless the corporation has held them out in the manner before stated to be its officers. If the law were otherwise, persons having no legal authority to act as corporators might assume it and proceed and elect officers, who by being considered to be officers *de facto* might convey the whole property of the corporation and divest it of all its rights. No decided case, it is believed, will be found to maintain such a doctrine.

In this case the grantee of the corporation, Mathew C.

St. John, or the *cestues que trust,* or William I. Tenney, their grantee or assignee, cannot claim to take the position of a purchaser from persons, who had been held out by the corporation to the public as its officers without any knowledge of their real character and authority. For it appears, that these conveyances were made to persons, who claimed to be stockholders actively participating in all the proceedings of the corporation, and they must be regarded as having a knowledge of all its acts, and of its legal right to act. The tenant is in no way connected with those proceedings, and is entitled to require, that the demandants should establish their title. They appear only to represent the legal title of William I. Tenney, as his assignees under an act of insolvency.

If there were no legally existing mortgage, there could be no legal sale at auction of the right of the corporation to redeem it. In such case the execution could only be satisfied from the real estate of the corporation by a levy and appraisal. Tenney obtained no legal title by that seizure and sale, and he could convey none to the demandants.

Under such circumstances it will not be necessary to consider, whether the tenant obtained any title whatever by the proceedings stated in the testimony.

*Demandants nonsuit.*