## THE FRANCO-TEXAN LAND CO. v. LOUIS LAIGLE.

### (Case No. 4719.)

59   339
80   268
59   339
82    56

1. CORPORATION.— The rule which restricts the legal existence of a corporation to the limits of the state which created it does not prevent it from transacting such business beyond the state in which it had its origin as is usually performed by mere, agents of the corporation.

2. SAME.— The authority granted to "The Franco-Texan Land Company," a corporation chartered by Texas to transact business in the city of New York, and Paris, France, referred only to such acts as might be done by directors and other agents, and did not authorize the performance of strictly corporate acts, which could be performed by the stockholders alone, or authorize the holding of a stockholders' meeting outside the limits of Texas.  Directors elected at such meetings beyond Texas are not *de jure* officers of the corporation.

3. OFFICERS DE FACTO.— A *de facto* authority in an officer of a corporation to do an act as such cannot arise where his election was void, and not merely irregular; and, where there has been no assertion of the right to discharge the duties of the office, except in the instance where the authority is questioned, and where there has been no acquiescence in his official acts.

4. COLLATERAL ATTACK.— A void election of one claiming under it to exercise official functions for a corporation may be attacked collaterally.

5. ESTOPPEL.— If an act of a corporation be absolutely void, participation in such act by a stockholder would not give it vitality even as to him, and he would not be estopped to deny its legality.

6. STOCKHOLDER.— A stockholder in a land company, who, under its charter and by-laws, is entitled to exchange his stock for a specific amount of land, is not limited in his remedy to the method of exchange prescribed by the by-laws, if they are so framed as to leave him at the mercy of the president and directors, and empower them to destroy his right or ruinously delay its recognition.  He may, in such case, establish his right by suit to the stock, and enforce its exchange.

APPEAL from Parker.  Tried below before the Hon. A. J. Hood. The decision was upon an agreed case, as follows:

"The appellant was duly incorporated, under the general law of this state, on the 26th day of July, 1876; the articles of association naming the directors for the first year, who served the company as such for that period of time.

"The purposes for which the incorporation was formed are, in the language of the charter, as follows:

"'1st. The acquisition, by purchase or otherwise, and the subdivision of lands, the management and leasing thereof, and the sale and conveyance of same in lots and subdivisions, or otherwise.

"'2d. The division of the net proceeds of said lands, when sold, among the owners of the capital stock of said company, and the distribution of said lands among said stockholders by conveyance of the same in exchange for said stock, on such terms as shall be determined by said company.

" '3d. The promotion of immigration, with a view to the settlement, subdivision and sale of any and all lands that may be owned by this corporation.'

" Article 3 of appellant's charter is in the following words:

" 'The principal office for the transaction of the business of this corporation shall be at Weatherford, Parker county, Texas, and its business may also be transacted at the city of New York, and in Paris, France, and at such other places as may be for the interest of said corporation.  Branch offices may be established and maintained at said cities of New York and Paris, and at such other places as the board of directors may determine.'

" Article 7 of the charter provides:

" ' That each share of stock issued by said company shall be received in payment for lands purchased of the company at prices fixed by the board of directors, so as to procure a *pro rata* division of the lands, or their value, among the stockholders.'

" The power to enact by-laws is given to appellant's board of directors by the charter.

" Article 54 of the by-laws reads:

" ' Any stockholder shall have the right to exchange his stock for lands of the company, at rates determined by the board of directors.  The possession of a share of the company's stock shall carry with it full adhesion to the by-laws of this company, and to the decision of the stockholders' meetings, and the board of directors.'

" On the —— day of ——, 1879, the stockholders assembled in Paris, France, where they had been in the habit of assembling for such purpose, and elected a board of directors for the year 1880. In 1880, the board of directors, so elected in 1879, amended a by-law, by which they fixed the price of land, when the land was selected by the stockholder, and to be paid for in stock, at three times the price for which the land would be sold for cash, and further prescribed the mode of exchanging stock for land, as follows:

" ' When a stockholder desires to exchange his stock for lands belonging to the company, he shall deposit his shares of stock with the president of the company in Texas (if the stockholder lives in America), taking the president's receipt therefor.

" ' The president shall at once forward the shares of stock so deposited to the Paris office in France, that the same may be compared with the stubs, and otherwise verified, so as to test its genuineness.

" ' If the stock so forwarded shall be found genuine, then, upon advice of the Paris office, the Texas president shall convey to the

stockholder the amount of land selected by him, and to which his stock entitles him.'

"Appellee Louis Laigle is a native Frenchman, and immigrated to Texas from France in October, 1880. The amended by-law above referred to, regulating the mode of exchange, was enacted by the board of directors of appellant, which board was elected at an election held by the stockholders of appellant in 1879, in Paris, France, and appellee, though not personally present at said election, was represented at said election by his power of attorney, and his stock was voted.

"Louis Laigle, appellee, owned eight (8) shares of stock, purporting to be issued by the appellant, The Franco-Texan Land Company.

"On the 4th day of October, 1881, Louis Laigle applied to the president of appellant at Weatherford, to exchange his eight shares of stock for land belonging to the company, pointing out the particular land he desired to exchange his stock for, and proposed to give three times the price fixed for a cash sale of said land, thus complying with the by-laws of appellant regulating the mode of exchange prior to 1880.

"The president offered to receive his stock, receipt for same, forward same to the Paris office for verification, and when notified of its genuineness, agreed to convey to appellee the land selected by him — that the amended by-law of appellant, amended by the board of directors in 1830, required this action on the part of its president.

"Appellee Laigle demanded a conveyance at once to him of the land he had selected, and declined to deposit his eight shares of stock with the president, as required by the company's amended by-law, amended in 1880 by the board of directors of appellant.

"It was agreed that appellee Laigle did comply with the by-law of appellant, regulating the mode of exchange, as the said by-law existed prior to its amendment by the board of directors in 1880.

"Appellant's president refusing to permit an exchange of stock for land, except in compliance with said amended by-law, amended by the board of directors in 1880, appellee Laigle, on the 13th of October, 1881, instituted this suit to force a title to the land described in his petition, from the company.

"Appellee Laigle, in bringing this suit, relied upon the by-laws of appellant as they existed prior to the said amendment, adopted by the board of directors in 1880, regulating the mode of exchanging stock for land; and further, that the said amended by-law was null and void and of no binding force, because the stockholders had no

legal right to elect a board of directors outside of Texas; that the election of directors was a corporate act, which could only be legally done, under the charter of appellant, in the state of Texas; hence the board of directors elected in Paris, France, had no power to bind the stockholders by any by-law enacted by them.

"Appellant relies upon the third article of its charter for authority to do any character of business in Paris, France, and also that appellee cannot attack the legality of the election of appellant's board of directors in 1879, collaterally; also upon the fact that appellee, having participated in the election of the board of directors which enacted the amended by-law referred to, is not in a situation to deny the board's authority.

"A jury being waived, this cause was submitted to the court, and the court decided the election of the board of directors in Paris, France, was void, and invested them with no authority to make by-laws which would bind the stockholders, and that appellee Laigle was not estopped, by participating in the election of directors of appellant, to deny their authority to enact by-laws for said company, and gave Laigle judgment for the land.

"It is agreed that the only questions involved in this case for the decision of the supreme court are:

"1st. Can appellee attack the legality of the election of appellant's board of directors, collaterally?

"2d. Whether, under the third article of appellant's charter, a legal election for a board of directors of appellant could be held and conducted in Paris, France.

"3d. As Laigle, by his power of attorney, participated in the election of said board of directors which passed the amended by-law referred to, is he estopped from denying its authority to enact by-laws which shall be binding upon him?

"The parties in the above entitled cause agree to the above statement of the case, and respectfully ask of the supreme court a decision of the questions submitted.

"E. P. NICHOLSON,
"Of counsel for appellant The Franco-Texan Land Company.
"A. J. BALL,
"Of counsel for appellee Louis Laigle."

*E. P. Nicholson*, for appellant, cited Ang. & Ames on Corp., §§ 286, 287; Minor *v.* Mechanics' Bank, 1 Pet., 46; Cooper *v.* Curtis, 30 Me., 488; Dispatch Line of Packets *v.* Bellamy Manuf'g Co., 12 N. H., 205; Baird *v.* Bank of Washington, 11 S. & R., 411; Field

on Corp., sec. 146; Ohio & Miss. Railroad Co. v. McPherson, 35 Mo., 13; Trust. of Vernon Society v. Hill, 6 Cow., 23; All Saints' Church v. Lovett, 1 Hall (N. Y.), 198-9; 2 Blackf., 367; Ang. & Ames (3d ed.), 104-5; Cornish v. Abington, 4 Hurl. & N., 549; 6 Wait's Act. & Def., 689, § 2; Eakright v. Logansport R. R. Co., 13 Ind., 404; Atlantic R. R. Co. v. Johnson, 70 N. C., 348; Walker v. Fleming, id., 483; Steinmetz v. Versailles, etc., T. Co., 57 Ind., 457; 1 Redf. on Railways, p. 200, § 4.

WILLIE, CHIEF JUSTICE.— A private corporation, whose charter has been granted by one state, cannot hold meetings or pass votes, or have any legal existence in another state. It must dwell in the place of its creation, and cannot migrate to another sovereignty. Bank of Augusta v. Earle, 13 Pet., 519; Miller v. Ewer, 27 Maine, 509; Aspinwall v. O. & M. R. R. Co., 20 Ind., 497.

This prohibition as to the performance of acts, outside of the state where chartered, refers to acts of a strictly corporate character, such as must be discharged by the corporators themselves, such as the original organization, the election of directors, etc. The better opinion is, that the mere transaction of such business as is usually done by the directors or other agents of the body may be done as well without the state as within it. Bellows v. Todd, 39 Iowa, 209; Arms v. Conant, 36 Vt., 745; Gal. v. R. R. Co., 11 Wall., 476, 477.

The third section of the charter of the "Franco-Texan Land Company" declares that "its principal office for the transaction of business shall be at Weatherford, Parker county, Texas, and that its business might also be transacted at the city of New York, and at Paris, France," etc.

It is, to say the least, doubtful whether or not a state could grant a corporation the right to change its residence to another sovereignty at its own will, and there exist and perform its corporate functions. It is not to be presumed that such a thing was intended by this charter, but that the words *transact business* were used in the ordinary sense in which they are employed in reference to corporations, i. e., perform such acts as are done through directors and other agents, and that they were not applied to strictly corporate acts, which can be done by the stockholder alone.

We do not think that this section gave the company the right to hold stockholders' meetings outside of the state of Texas.

It is well settled that corporations being prohibited from holding meetings of stockholders outside of the sovereignty of their crea-

tion, the proceedings of all such meetings are absolutely void and of no effect. See authorities cited above. Hence the directors elected at the meeting of the stockholders of the present corporation, held in Paris in 1880, were not *de jure* officers of that body, nor clothed with the power of making by-laws for its government.

But it is said that they were *de facto* directors, and as such the appellee was bound by their acts.

Lord Ellenborough defined a *de facto* officer to be "one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law." Rex *v.* Corporation of Bedford Level, 6 East, 268–9. In commenting upon this definition it is said in Greene's Brice's Ultra Vires, p. 523, that it "requires the addition of something to fix the corporation with acquiescence in the acts of the so-called officer — the mere assumption or reputation is not *per se* sufficient." A person claiming to be a *de facto* officer should have some colorable right to the office, though he has no legal right thereto by reason of some informality or irregularity in his election or appointment.

A *de facto* authority cannot arise when there has been absolutely no election or appointment, or, what is equivalent, one that is absolutely null and void, and not merely irregular or informal; and where there has been no assertion of the right to exercise the office except in the very instance where it is questioned; and where there has been no acquiescence in the official acts of the person claiming such authority, either on the part of the body for whom he professes to act, or of any one else. Otherwise the simple bold assertion of a right to an office would bind such corporation or body by the acts of the usurper, and parties suffering from his unlawful acts could never question them.

The facts in the record bring this case precisely within this class of acts. The directors were elected at a meeting of stockholders held in France, which election was absolutely null and void, and which was subject to collateral attack, and gave the persons elected no more power than if there had been no election whatever. The proceedings of such a meeting no court of justice could respect, no matter in what manner it might be questioned. The only act performed by this board of directors, so far as we are informed, was to enact the by-law complained of, and we have no proof that this by-law was ever attempted to be enforced, except in the case now under consideration. It was not attempted to be enforced then, except by the president of the company, and we are not informed that he had power by virtue of his office to bind the company to acquiescence in

the conduct of fictitious directors. No one else, except the president, seems to have recognized the validity of the by-law and the authority of the board making it. Under the facts brought before us, we do not consider that this board were *de facto* directors, and hold that they had no right to pass the by-law, and it, too, was void.

It is sought to hold the appellee bound by the acts of the directors, because, as is alleged, he participated in the meeting of stockholders at Paris through one holding his power of attorney. It is not shown what character of power of attorney was given by Laigle to the party who voted his stock at that meeting. If the power was general, without authority to use it at a meeting held without the state, the presumption would be that it was to be legally exercised, and, if so, the agent transcended his authority when he used it at a prohibited assembly of the stockholders.

As the record is to be construed most strongly against the party bringing the cause here, we might presume that the power of attorney was general, and rest our decision there. But if it conferred a special authority to vote at the Paris meeting, the appellee is still not estopped.

The doctrine as stated in reference to *de facto* authority applies also to questions of estoppel. It is only where the act of the corporation sought to be denied is merely irregular or informal, or defective in no vital respect, that any one participating in it is estopped to deny its validity. If it be absolutely void, and liable to be treated as a nullity in any proceeding where called in question, no participation in such act could give it vitality, even as to one who took part in it. For instance, if the charter of a company required the subscription of a certain amount of stock before it could be organized, and an organization was had with a subscription of a less amount, one who had taken part in this irregular formation of the company would probably be estopped from setting up that it was no corporation. But if the so-called corporation had no charter, or a charter which could not be constitutionally granted, there would be no estoppel against denying its existence by any one, whether a partaker in its organization or not. Heaston *v.* Cin. & I. R. R. Co., 16 Ind., 279; Harriman *v.* Southern, id., 190.

So if a corporation were prohibited from passing a by-law except by a two-thirds vote of the directors, it might be out of the power of a director, who took part in passing one by a bare majority, to dispute its validity. But if the law gave the power to the directors only to make by-laws, and a part of the stockholders should

assume to do so, such by-laws would be of no more effect as to these particular stockholders than as to any one else.

We think that the Paris meeting being a nullity, the directors elected by it mere usurpers in assuming to make by-laws for the government of the company, such by-law was wholly void, even as to the appellant whose agent took part in the unauthorized meeting.

There is another consideration which would seem to be decisive of this cause in favor of appellee, even though the by-law had been passed by a competent board of directors. Under the charter and by-laws of the company the appellee was entitled to exchange his eight shares of stock for a certain quantity of land. The object to be attained by the by-law in reference to the manner of making the exchange was to prevent any imposition upon the company by surrendering to it fraudulent or fictitious stock and receiving from it land in exchange. There could have been no intention to prevent a *bona fide* stockholder from obtaining land in exchange for his stock. The by-law merely established a method of ascertaining whether or not the shares of stock were or were not genuine.

It would seem, then, that if the appellee could establish that fact by any other proof which was sufficient, that he could go into a court of justice and do so, and could not be bound to pursue the method pointed out by the by-laws. The mode of proof required by them might be so onerous as to amount to a privation of his rights. In this instance it involved a great deal of trouble and consumption of time, and his rights were in a great measure left at the mercy of the president and other agents of the company, who could delay or even destroy them, if they should choose so to do. Should the stock be genuine and those agents refuse so to declare it, the appellee would certainly have a right to sue the company, establish his stock and secure the land. It would seem but reasonable that he should do so without waiting for the action of those agents, when he was possessed of full legal proof of his rights independent of the mode pointed out by the by-laws.

Be this as it may, we think the by-law void and not binding upon him, and the judgment is affirmed.

                                                    AFFIRMED.

[Opinion delivered April 27, 1883.]