EMPIRE MILLS v. ALSTON GROCERY COMPANY.

(No. 2983.)

APPEAL from Dallas County.    Opinion by WILLSON, J.

*(Transferred from Austin.)*

McCORMICK & SPENCE and WALTON, HILL & WALTON, counsel for appellant.

No counsel appeared for appellee.

§ 221. *Foreign corporation; liability of as a copart-nership; when such corporation is invalid in this state; comity of states; case stated.* Appellant sued appellee to recover an alleged indebtedness. Appellant alleged that appellee company was a copartnership firm composed of several individuals, naming them. Appellees denied the copartnership under oath. In a supplemental petition appellant alleged that said company had obtained a charter from the state of Iowa authorizing it to do a mercantile business in the state of Texas; that said charter was not authorized by the laws of Texas, and operated as a fraud upon said laws, etc.; and that appellees were in fact and in law a copartnership, and liable as such. A general demurrer to said supplemental petition was sustained, and this ruling of the court was, we think, erroneous. It was made to appear on the trial, as alleged in said supplemental petition, that appellees' company was doing a mercantile business in Dallas, Texas, under said Iowa charter, and in the course of said business contracted the indebtedness sued for herein; that said charter was obtained in Iowa because the laws of Texas did not permit such a corporation, and was obtained in order to evade the laws of Texas. We are of the opinion that said charter, in so far as it was intended to operate in said state, is absolutely void, and that in

conducting said business appellees were in fact and in law copartners, and not a corporation, and that the court erred in rendering judgment for appellee.

January 17, 1891.            Reversed and remanded.

### ON MOTION FOR REHEARING.

(Overruled February 25, 1891.)

Opinion by DAVIDSON, J.

Appellant sued appellees to recover an alleged indebtedness. Appellees were sued as a copartnership firm, composed of several parties, whose names are set out in the petition. The partnership was denied under oath by all the defendants. By first supplemental petition appellant alleged that appellees had obtained an act of incorporation from the state of Iowa for the purpose of carrying on a general mercantile business in this state; that appellees conducted a mercantile business in Dallas, Texas, and nowhere else; that said business began in March, 1886, and continued until August 16, 1887, when the company dissolved, and Alston continued to conduct said business until November, 1887. Appellant further alleged appellees filed their act of incorporation in Iowa, "purposely to evade and to practice a fraud upon the laws of Texas; that the laws of Texas prohibited, and did not permit or allow the formation of such corporations, at the time specified, for the purposes or objects intended by defendant company, and for the business conducted by the defendant company; that the same was contrary to public policy, and in violation of the laws of the state of Texas; and that said act of incorporation was a fraud upon Texas, and was procured fraudulently as to both states, Iowa and Texas." Appellees filed a general demurrer thereto, which was sustained. They also filed denials of partnership under oath. The court directed verdict to be returned against appellant, which was done, and judgment was entered accordingly. Appellant prose-

cuted his appeal to this court, and during this term of this court the judgment was reversed and the cause remanded; and in due time appellees filed their motion for rehearing, in which it is urged that the court erred in remanding the case, and suggested that the rehearing be granted, and the judgment be affirmed. In the opinion heretofore rendered this court held that "in so far as it [the act of incorporation of appellee company] was intended to operate in this state it is absolutely void, and that in conducting said business appellees were in fact and in law copartners, and not a corporation, and that the court erred in rendering judgment for appellees." In this motion for rehearing appellees contend that, by a rule of comity, a corporation organized in one state is permitted to transact business in other states, "unless such rule of comity is expressly repealed;" and that "this repeal will not be implied from the fact that, in the state where such corporation seeks to do business, a corporation for like purposes could not be organized;" and virtually that the power of a state to "repeal this general rule of comity does not extend to foreign corporations," etc. If appellee be correct, then the rule of comity would be superior to the statutory provisions of the state where the corporation was seeking to do business. Appellee states his proposition in advance of and beyond what we understand the law to be. "A corporation is the creature of a statute immediately creating it, or authorizing proceedings for its organization." "The powers of a corporation, under statutes, are such, and such only, as the statutes confer." [Suth. St. Const., § 382; Mor. Corp., § 4 and notes; 4 Amer. & Eng. Enc. Law, p. 206 and notes, and collated authorities on pp. 206–209.] All the authorities on the subject agree that such is the law.

Again, it may be said in this connection that "it is a fundamental principle that the laws of a state can have no binding force, *proprio vigore*, outside of the territorial limits and jurisdiction of the state enacting them."

[Mor. Corp. (1st ed.), § 500; Story, Confl. Laws, § 7; Sedg. St. & Const. Law, 69.] "Hence, it follows that a state cannot grant to any person the right to exercise a franchise in a foreign state or country; for a franchise is the result of a law authorizing particular individuals to do acts or enjoy immunities which are not allowed to the community at large." [Same authority. See, also, Mor. Corp., § 535.] "A grant of corporate existence is a grant of special privileges to the corporators, enabling them to act for certain designated purposes as a single individual, and exempting them (unless otherwise provided) from individual liability. The corporation, being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. It must dwell in the place of its creation, and cannot migrate to another sovereignty. The recognition of its existence, even by other states, and the enforcement of its contracts made therein, depend purely upon the comity of those states." [Mor. Corp. (1st ed.), § 500; Bank v. Earle, 13 Pet. 588; Runyan v. Coster, 14 Pet. 129, 130; Railway, etc. Co. v. Coffey Co., 6 Kan. 252; Thompson v. Waters, 25 Mich. 221; Railroad Co. v. Glenn, 28 Md. 287; Land Co. v. Laigle, 59 Tex. 339; Wright v. Bundy, 11 Ind. 398; Miller v. Ewer, 27 Me. 509; Merrick v. Van Santvoord, 34 N. Y. 208, 220; McCall v. Manufacturing Co., 6 Conn. 428, 435, note a; Paul v. Virginia, 8 Wall. 181; Smith v. Alvord, 63 Barb. 423.] The rule of comity is entirely in subjection to the sovereign will of the state, and can only exist by permission of the state in which it is sought to employ it. A corporation has no implied authority to do any act in a foreign state which is not permitted by the laws of the latter to individuals generally. [Mor. Corp. (1st ed.), § 505, and note 1.] Speaking of the limit of the rule of comity, the same author says: "By the common law, the right of acting in a corporate capacity is not accorded freely and without conditions to every one, but must be derived from an act of the legis-

lature. It is evident that there are reasons of public policy underlying this restriction, and it cannot be assumed that its effect may be nullified by the comity extended towards foreign states. To obtain a charter for the purpose of evading the laws of a foreign state, under cover of the rule of comity, would be a fraud upon the state granting the charter; and to attempt to act under such charter in the foreign state would be a fraud upon the latter." [Mor. Corp. (1st ed.), § 508.]

Comity was never accorded for the purpose of giving any state an unlimited power to dispose of the franchise of acting in a corporate capacity in other states, or to " spawn corporations " for that purpose. [Railway, etc., Co. v. Coffey Co., 6 Kan. 254.] No rule of comity will allow one state to charter corporations to operate in another state, unless there is willingness on the part of the foreign state that it should be so. To hold otherwise would be to say that the right of one state, aided by comity, is superior to the sovereign will of the other. This involves the surrender of sovereignty to a rule of comity, and to a matter of international etiquette, which no independent nationality should for a moment think of doing. It is not necessary that a state should by express enactment exclude foreign corporations in order to indicate that they shall not be allowed to act within its jurisdiction; the will of the state may be implied from its general policy and legislation. " Whenever a state sufficiently indicates that contracts which derive their validity from its comity are repugnant to its policy, or are considered as injurious to its interests, the presumption in favor of its adoption can no longer be made." [Bank v. Earle, 13 Pet. 592; Myers v. Bank, 20 Ohio, 301, 302; Starkweather v. Society, 72 Ill. 50; Trust Co. v. Lee, 73 Ill. 144; Christian Union v. Yount, 101 U. S. 356.] In this last-cited case Mr. Justice Harlan, speaking of the rule of comity, said: " In harmony with the general law of comity obtaining among the states composing the

Union, the presumption should be indulged that a corporation of one state, not forbidden by the law of its being, may exercise, within any other state, the general powers conferred by its own charter, unless it is prohibited from so doing, either in the direct enactments of the latter state, or by its public policy to be deduced from the general course of legislation, or from the settled adjudications of its highest court." [Page 356 of said case. See Tayl. Corp. "Having Capital Stock," § 384.] (In accordance with these principles, see authorities collated in note to above-cited section. They are too numerous to cite here.) Therefore an act of incorporation, procured for the purpose from one state to evade the laws of another state, and to carry on its business in the latter state, would constitute it a fraud upon the state granting the corporate powers, as well as upon the state in which it is sought to organize and operate the corporation. It is equally well settled that the corporation cannot exercise its corporate powers in the foreign state when it is prohibited from doing so by direct enactment of the legislature of that state; it is also as well settled that the act of incorporation cannot be put into operation there if the will of the state can be implied from its general policy and legislation, nor can it exercise its powers therein if the settled adjudications of the higher court of the state are adverse thereto.

Applying these rules to the action of the court sustaining the general demurrer, we are of opinion that said ruling was erroneous. The first supplemental petition presented issues and facts which clearly avoided appellees' denial of partnership. The act of incorporation, if in accord with the laws of Iowa, but procured for the purpose of evading the laws and public policy of Texas, or the general policy of her legislation, or the adjudications of her courts of last resort, would be void and of no effect; and because the appellees may have carried on business in Dallas, Texas, holding themselves out as a

corporate body, that fact would not constitute a corporation. By an examination of the laws and the constitution of Texas, we are led to the conclusion that appellees, even had they organized under the laws of Iowa, could not have carried on a corporate business in this state, as general merchants, by virtue of such act of incorporation. The constitution provides that "no private corporation shall be created except by general laws." [Const. 1876; art. 12, § 1.] By an act of the legislature provision was made for the creation and operation of such companies. [R. S. 1879, art. 566, subd. 27.] This subdivision of said article was repealed by an act of the legislature in 1885. [Acts 1885, p. 59.] Said article 566 was amended again in 1887, but subdivision 27 was not re-enacted. This repeal of said subdivision 27 was an emphatic denial to all parties of the right to organize mercantile corporations in this state, and directly prohibitory of such corporations operating in Texas. The statute granted the privilege, and then revoked it. This superseded the rule of comity, and prohibited the foreign corporations. Not only so, but the legislature, during the same session of 1887, enacted another law, requiring foreign corporations, under heavy penalties, to obtain permits to do business in this state. [Acts 1887, p. 116.] This was prohibitory legislation of a decidedly marked and stringent character. So far as this is concerned, it is immaterial that said act may have been held unconstitutional, for it very clearly expresses the legislative policy as to foreign corporations. It did not change or alter the policy already in vogue, but only the more strongly emphasized it as to these corporations. It would hardly be contended that, in repealing subdivision 27 of article 566 of the Revised Statutes, the legislature intended to exclude and debar the citizens of Texas from this field of corporation business, and leave it open to corporations from foreign states and nations under the rule of comity. Legislatures are not presumed to do unwise or foolish

things, they are not presumed to legislate against the interests, rights and privileges of the citizens of their own states, nor are they presumed to intend to legislate adversely to the citizens of their own country and in favor of foreign corporations. Under the first supplemental petition of appellant, it became a question whether the appellees' act of incorporation in Iowa was sought as an evasion of, and a fraud upon, the laws of Texas or the public policy of her general legislation, and it became a question, and an issue therein, to be determined on the trial, whether the act of incorporation was a fraud upon either or both of said states. These matters, as well as other things, were pleaded in said petition. The petition was not subject to the general demurrer interposed, when viewed from this stand-point.

In the motion for rehearing it is contended that appellant dealt with the appellees as a corporation, and that it is thereby estopped from denying the corporate capacity of appellees. This is a question of fact to be determined on the trial. Appellant contends that appellees were partners. He alleges that the "act of incorporation" of appellees constituted, in law and in fact, no corporation. These are questions of law and fact. If appellees had organized a valid corporation. and were authorized to do business as such corporation in this state, and appellant so dealt with them, he might be estopped from denying their corporate capacity. But if appellees were not a valid corporation, and had no authority and were not permitted to do business as such corporation, then he would not necessarily be estopped from denying their corporate powers and existence. That appellees called themselves a corporation does not constitute them a corporate body. Obligors are bound, not by the style which they give to themselves, but by the consequences which they incur by reason of their acts. It matters not what they call themselves. [Chaffe v. Ludeling, 27 La. Ann. 607; Bank v. Landon, 45 N. Y.

410, 414; Ridenour v. Mayo, 40 Ohio St. 9.] "A corporate creditor, seeking to enforce the payment of his debt, may, however, ignore the existence of the corporation, and may proceed against the supposed stockholders as partners, by proving the prescribed method of becoming incorporated was not complied with by the company in question." [Cook, Stocks (1st ed.), § 233; Bigelow v. Gregory, 73 Ill. 197; Abbott v. Smelting, etc. Co., 4 Neb. 416; Hill v. Beach, 12 N. J. Eq. 31; Garnett v. Richardson, 35 Ark. 144; Coleman v. Coleman, 78 Ind. 344; Kaiser v. Bank, 56 Iowa, 104; Martin v. Fewell, 79 Mo. 401, 410.]

The creditor "is not estopped from so doing, since he is not repudiating a contract, but is enforcing it. The fact that he contracted with them under a corporate name is immaterial, since, at common law, parties may carry on business under any name they choose." [Cook, Stocks, § 233.] The defense relied on was based on the idea and assertion that the appellees constituted a corporation, and were not partners. This is one of the principal grounds urged for the rehearing. Appellees testified that they were incorporated, and so held themselves out to the world. It is true it was testified that they told parties that they were incorporated. But that did not make it so. The law requires some things of parties who may have the legal right to incorporate, and these requisites must be complied with before the corporation can be organized legally. Unless it be so organized, and in strict accord with the law authorizing its creation or formation, it cannot exercise the function of a corporation. [Land Co. v. Laigle, 59 Tex. 339; Bigelow v. Gregory, 73 Ill. 197; Abbott v. Smelting, etc. Co., 4 Neb. 416; Garnett v. Richardson, 35 Ark. 144; Coleman v. Coleman, 78 Ind. 344; Kaiser v. Bank, 56 Iowa, 104; Martin v. Fewell, 79 Mo. 401, 410; Ridenour v. Mayo, 40 Ohio St. 9.] "The question as to the existence of a partnership is a mixed question of law and

fact; and the testimony of a witness in respect to it amounts, frequently, to nothing more than the expression of an opinion." [Ridenour v. Mayo, 40 Ohio St. 13.] So it may be of a corporation, even where the corporation is authorized by the law of the land, and the corporation has made an attempt to comply with and incorporate under the statute, but has failed in the attempt.

But it is admitted and testified by appellees that the laws of Texas prohibited their pretended act of incorporation, and that, so far as Texas was concerned, they could not secure a charter, and were not permitted to incorporate here. They not only failed to show themselves a corporation, but utterly excluded that idea, and conclusively proved that they could not be a · corporation under the laws of Texas, because prohibited therefrom by the laws of said state. ·Where a company relies on its corporate capacity, the fact that it is a corporation must be. made to appear, and the burden is upon the company to do so. [Authorities above cited.] Corporations as such can only possess such powers as are conferred on them by the statute creating them or authorizing their creation. This is universally so. If it fails to incorporate under such law, then it is invalid, because there is nothing from which it can spring, nor on which it can base its life and existence. Without the law of its creation, it is not a creature. It is artificial, and can have no existence and no authority, except as conferred by the law of its creation. Abrogate the law and the corporate body cannot organize. But it does not follow that, because of a failure to comply with the law, its contracts are void. It is still a company of individuals making contracts and dealing in the affairs of the world. These contracts are not necessarily void. The company or members thereof might sue or be sued as copartners on such contracts. This would not lead to the repudiation of their contracts, but to the enforcement thereof.

There is a very marked distinction to be noticed as to the relations such a company would occupy towards the state as to its corporate capacity, and its attitude towards individuals with reference to contracts entered into with such individuals, and financial transactions carried on between them.    This is distinctly recognized in this state.    [Mortgage Co. v. Worsham, 76 Tex. 556.]    Our supreme court say in that case: "We do not think that a failure of the corporation to procure a permit, even if such failure had the effect of preventing it from further prosecuting its business in this state, should have the further effect of closing the courts of the state to it so as preclude it from asserting rights and recovering property already acquired."    Authorities heretofore cited show this distinction is recognized everywhere where equity prevails.    Because the act of incorporation is void, it does not follow that contracts made with the company are void or non-enforceable in the courts.    "The mere assumption of corporate powers, without any attempt at incorporation, cannot, of course, protect the members from liability."    [Cook, Stocks, § 234; Pettis v. Atkins, 60 Ill. 454; Fuller v. Rowe, 57 N. Y. 23.]    They would be partners.    [Fuller v. Rowe, 57 N. Y. 23.]    By the rule of comity a corporation organized under the laws of a state may transact business beyond the borders of that state.    By this rule it will be observed that the corporation is required to organize; and that organization must take place under the laws of the state where said organization is authorized, and not elsewhere.    An attempt to organize the corporation is not sufficient and does not meet the requirement and demand of the law, nor does it comply with the rule of comity.    A failure to so organize falls short of the requirements of the law, as well as of the rule of comity.    The corporation must organize, else it is not a corporation.    The rule of comity does not supply corporate powers nor confer corporate capacity.    "It merely enables a body of corporators

chartered by one state to act in a corporate capacity in another state, subject to all the laws and regulations of the latter." [Mor. Corp., § 505; Bank v. Earle, 13 Pet. 588, 589; Bank v. Godfrey, 23 Ill. 579; Ohio Life Ins. etc. Co. v. Merchants' Ins. etc. Co., 11 Humph. 1; Hill v. Beach, 12 N. J. Eq. 31; Ang. & A. Corp., 250 *et seq.;* Aspinwall v. Railroad Co., 20 Ind. 492; Thompson v. Waters, 25 Mich. 222; Bard v. Poole, 12 N. Y. 505; Merrick v. Van Santvoord, 34 N. Y. 220; Smith v. Alvord, 63 Barb. 423; Wright v. Bundy, 11 Ind. 398; McCall v. Manufacturing Co., 6 Conn. 428, 435 and note *a.*]

An examination of the case before us discloses no organization by appellees as a corporation at any time or place. One of the witnesses testified that they organized their business in Dallas, Texas, but no evidence is adduced on the subject of their organization as a corporate body. The act of incorporation required them to elect a president, vice-president and other officers, and a board of directors, and, so far as we have been able to ascertain, this was not done. They were required to hold annual meetings, and this was not done, although it continued in business for about a year and a half. At the end of this time Mr. Alston says he bought up the stock and continued business a few months longer. They did no act in Iowa save to file their act of incorpotion. It was never contemplated that they should or would do anything more than that in that state. It was testified also that the reason, and the only reason, said act of incorporation was resorted to and procured in that state, was because such a business as they contemplated could not be incorporated in Texas. Appellees did not act in good faith in procuring their act of incorporation, as is disclosed by their own evidence. In order that such corporate character be sustained, even if the parties had fully incorporated and organized as a corporate body, it is necessary that both the state creating the corporation and the corporation created shall have acted in good

faith in conferring and taking the corporate privileges. These things being matters of proof must be shown by evidence, and it devolved upon appellees to show this. "A corporation must have obtained its franchise in good faith, in order to preserve its corporate character in its contracts, and shield its members from personal liability on such contracts." A corporation cannot incorporate in one state for the purpose of carrying on all of its corporate business in another. The stockholders would be held to be partners. [Hill v. Beach, 12 N. J. Eq. 31; Cook, Stocks, § 238. See, also, Railway, etc. Co. v. Coffey Co., 6 Kan. 245; Mor. Corp. (1st ed.), § 513; Railway Co. v. State, 31 N. J. Law, 543, 544.] That the Alston Grocery Company could, as a corporation, maintain suits, or could even have so done as such corporation, in this state, while in business, would hardly be affirmed by any lawyer; but that it could have, as a firm of individuals or partners, maintained or defended such suits, could not be successfully denied. The authorities already cited amply and fully sustain these positions. We are of the opinion that appellees were partners, and that appellant's suit was properly brought. The record shows that the Alston Grocery Company was not a corporation, and this is conclusively proven by themselves by their testimony. We are further of the opinion that the motion for a rehearing manifests no reason why we should recede from the opinion heretofore rendered herein, and said motion is therefore overruled.